Opinion issued April 21, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-01082-CR

———————————

Rodney Craig Price, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 262nd District Court

Harris County, Texas



Trial Court Case No. 1243463

 



 

MEMORANDUM OPINION

          A
jury convicted appellant, Rodney Craig Price, of the offense of felony murder.[1]  After appellant pleaded true to the
allegations in two enhancement paragraphs, the trial court assessed punishment
at life imprisonment.  In one issue on
appeal, appellant contends that his trial counsel, who had a previous business and
attorney-client relationship with the complainant’s brother approximately seven
years before appellant’s trial, had an actual conflict of interest that actually
colored his actions and rendered his assistance ineffective.

          We
affirm.

Background

          On
February 11, 2009, appellant was driving on Genoa Red Bluff Road in southeast
Houston when he was involved in a fatal traffic accident with the complainant,
Troy Augst.  According to witnesses, the
two-lane road was dark and narrow, with deep ditches on either side of the road
and no shoulders.  Richard Youst and
James Landry, who were driving separate vehicles behind appellant, both
testified that appellant pulled into the opposite lane to pass two other
vehicles and hit the complainant’s vehicle “head on.”  Youst and Landry agreed that the complainant
had “no place to go” on the road to avoid the collision.  The complainant, whose blood alcohol level ranged
from 0.08 to 0.17,[2]
died at the scene.

          Youst
and Landry, who approached appellant’s vehicle after the collision, and Houston
Fire Department Captain M. Wallace, who provided medical assistance to
appellant at the scene, all testified that they could smell the odor of alcohol
on appellant’s breath.  Captain Wallace
and Youst further testified that they observed beer cans in appellant’s
vehicle.  Houston Police Department (“HPD”)
Officer D. Ciers testified that, while inspecting appellant’s vehicle at the
accident site, he discovered two cold sixteen-ounce beer cans—one empty and the other half-full—on the floorboard of the vehicle.

          Approximately
three hours after the accident, Officer Ciers visited appellant at the
hospital.  Due to appellant’s injuries,
Officer Ciers was unable to perform any of the standard field sobriety tests.  He testified, however, that, as he spoke with
appellant, he smelled alcohol on appellant’s breath and he observed that
appellant’s speech was slurred and his eyes were red, glassy, and
bloodshot.  Appellant consented to
providing a blood sample, which reflected a blood alcohol level of 0.022.

          Dr.
Erin Spargo, a forensic chemist at the Southwest Institute of Forensic Sciences
in Dallas, testified that her lab tested appellant’s blood for the presence of
drugs other than alcohol.  Dr. Spargo
testified that appellant’s blood contained 0.083 milligrams per liter of Hydrocodone,
which is “considerably higher” than the usual prescribed dose of 0.025 milligrams
per liter.  Dr. Spargo agreed with the
State that, due to the half life of Hydrocodone, appellant could have had twice
the tested amount in his blood at the time of the accident.  Dr. Spargo also testified that she detected
10.2 milligrams per liter of Carisoprodol (“Soma”) and Meprobamate, a
metabolite of Carisoprodol, in appellant’s blood.  She again stated that, because of the half
life of these drugs, the blood concentration could have been twice as high at
the time of the accident.  Dr. Spargo noted
that she had read a study that found that blood concentrations of Carisoprodol
and Meprobamate alone, with no other drugs present, of over ten milligrams per
liter resulted in “severe signs of intoxication and impairment.”  Amanda Culbertson, the criminal specialist at
the HPD crime lab who tested appellant’s blood alcohol levels, testified that
if alcohol and Hydrocodone are added to Carisoprodol and Meprobamate, one would
“expect an even greater impairment” than when Carisoprodol and Meprobamate
alone are present in the blood.

          The
State briefly called Eric Wilcox, the complainant’s half-brother, to identify
the complainant during the guilt-innocence phase of the trial.  The State did not question Wilcox, who was
highly emotional, about any other matters, and defense counsel did not
cross-examine Wilcox.  Appellant
stipulated that he had two previous convictions for driving while
intoxicated.  The jury convicted appellant
of felony murder as charged in the indictment.

At the punishment hearing, the
State again called Eric Wilcox to testify regarding how the complainant’s death
had affected his family, the circumstances under which Wilcox found out about
the complainant’s death, and the complainant’s general character.  Once again, defense counsel did not
cross-examine Wilcox.  After appellant
pleaded true to the allegations in two enhancement paragraphs, the trial court
assessed punishment at life imprisonment.

          Appellate
counsel moved for a new trial on ineffective assistance grounds, asserting,
among other things, that trial counsel rendered ineffective assistance due to
an actual conflict of interest.  Appellant
alleged that his trial counsel “had an ongoing relationship with the
complainant’s brother, who testified for the State.”

The trial court did not hear live testimony
at the hearing on the motion for new trial, although it admitted an affidavit
from appellant’s trial counsel.  Counsel
averred that, while reviewing the State’s file, he discovered that he had had a
previous business and attorney-client relationship with Eric Wilcox.  Specifically, counsel hired Wilcox’s company
to set up the credit card processing capabilities on his business website in
2000, and Wilcox then hired counsel to represent him on a “JP matter” in
2002.  Counsel stated that the
relationship terminated after Wilcox paid the legal fees that he had incurred.  According to counsel, he had not spoken to
Wilcox since 2002, and he stated that he and Wilcox did not have “an ongoing
personal or business relationship.” 
Counsel averred that he informed appellant of his connection to Wilcox, that
appellant indicated that he did not have any concerns about potential conflicts,
and that appellant wanted counsel to continue the representation.

Counsel further averred that he did
not cross-examine Wilcox because he was not a fact witness to the offense.  Counsel stated:

I also believed that there
was no relevant cross-examination to be gained from a very sympathetic State’s
witness and that to do so might actually be contrary to [appellant’s]
interest.  My decision not to cross examine
Mr. Wilcox was purely strategy as he repeatedly sobbed and had a difficult time
composing himself.  I did not feel
hampered in any way by my prior meeting of Mr. Wilcox and would not have
hesitated to cross examine him if I believed that it would have benefitted
[appellant].

 

Counsel concluded his affidavit by stating that he
had previously represented appellant on two felony offenses in 1997, and thus
his relationship with appellant pre-dated his relationship with Wilcox.  The trial court denied appellant’s motion for
new trial, and this appeal followed.

 

Actual Conflict of Interest

          In
his sole issue on appeal, appellant contends that, because his trial counsel
had a previous business and attorney-client relationship with Eric Wilcox, the
complainant’s brother, counsel had an actual conflict of interest that affected
his representation and constituted ineffective assistance of counsel.

The Sixth Amendment guarantees the
right to reasonably effective assistance of counsel, which includes the right
to “conflict-free” representation.  See Strickland v. Washington, 466 U.S.
668, 687, 692, 104 S. Ct. 2052, 2064, 2067 (1984); Cuyler v. Sullivan, 446 U.S. 335, 348–50, 100 S. Ct. 1708, 1718–19
(1980); see also Tex. Disciplinary Rules Prof’l Conduct
R. 1.06(b), reprinted in Tex. Gov’t Code Ann., tit. 2, subtit.
G, app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9) (providing that attorney
shall not represent person if representation “reasonably appears to be or
become adversely limited by the
lawyer’s . . . responsibilities to another client or to a
third person”).  A defendant may
establish that his trial counsel rendered ineffective assistance due to a
conflict of interest if he can demonstrate (1) that his counsel was burdened by
an actual conflict of interest and (2) that conflict actually affected the
adequacy of counsel’s representation.  Cuyler, 446 U.S. at 349–50, 100 S. Ct.
at 1719; Acosta v. State, 233 S.W.3d
349, 356 (Tex. Crim. App. 2007) (holding that Cuyler standard is proper standard to analyze claims of ineffective
assistance due to conflict of interest). 
As a “constitutional predicate” for an ineffective assistance claim
based on a conflict of interest, the defendant must establish that his counsel
“actively represented conflicting interests.” 
Cuyler, 446 U.S. at 349–50,
100 S. Ct. at 1719.  If a defendant
establishes both requirements of Cuyler,
he need not demonstrate prejudice—the second prong of ineffective assistance claims under the usual Strickland standard—to obtain relief.[3]  Id.;
see also Banda v. State, 890 S.W.2d
42, 60 (Tex. Crim. App. 1994) (“If appellant demonstrates [the Cuyler requirements], then the second
prong of the Strickland test will be
met because prejudice is presumed.”).

          An
“actual conflict of interest” exists if “counsel is required to make a choice
between advancing his client’s interests in a fair trial or advancing other
interests . . . to the detriment of his client’s
interest.”  Acosta, 233 S.W.3d at 355 (quoting Monreal v. State, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997)); McKinny v. State, 76 S.W.3d 463, 477
(Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing Ex parte Morrow, 952 S.W.2d 530, 538 (Tex. Crim. App. 1997)).  A potential conflict of interest does not
constitute an actual conflict of interest and is insufficient to reverse a
conviction.  See Cuyler, 446 U.S. at 350, 100 S. Ct. at 1719; Ex parte Meltzer, 180 S.W.3d 252, 256
(Tex. App.—Fort Worth 2005, no pet.) (“The showing of a potential conflict of
interest does not constitute an actual conflict of interest.”).  In the absence of a showing that a potential
conflict of interest became an actual conflict, we will not “speculate about a
strategy an attorney might have pursued, but for the existence of a potential
conflict of interest.”  Routier v. State, 112 S.W.3d 554, 585
(Tex. Crim. App. 2003).

          At
the hearing on appellant’s motion for new trial, the trial court admitted an
affidavit from appellant’s trial counsel discussing the alleged conflict of
interest.  Trial counsel averred that he
first met Wilcox, the complainant’s brother, in 2000 when he hired Wilcox’s
company to set up the credit card processing on his business website.  Counsel terminated this business relationship
after Wilcox completed setting up the processing, and counsel had no further
contact with Wilcox until 2002, when Wilcox hired him for legal representation
on a “JP matter.”  After this matter was
resolved, Wilcox paid the legal fees that he had incurred and ended the
representation.  Counsel averred that he
had not spoken to Wilcox since 2002, and he asserted that they did not have “an
ongoing personal or business relationship.” 
Counsel stated that he informed appellant of the relationship after he
reviewed the State’s file and discovered the potential conflict, and appellant
“indicated . . . that he did not have any concerns about
potential conflicts and [that he] would like [counsel] to continue to represent
him in his criminal matter.”

          Counsel
further averred that Wilcox’s testimony was limited to identification of the
complainant in the guilt-innocence phase and to victim impact and character
testimony in the punishment phase.  Counsel
decided not to cross-examine Wilcox on either occasion because “there was no
relevant cross-examination to be gained from a very sympathetic State’s
witness” and because cross-examining Wilcox “might actually be contrary to
[appellant’s] interest.”  Counsel opined
that he “did not feel hampered in any way by [his] prior meeting of Mr. Wilcox
and [he] would not have hesitated to cross examine him if [he] believed that it
would have benefitted [appellant.]” 
Finally, counsel noted that his representation of appellant preceded his
relationship with Wilcox, as counsel had previously represented appellant on
two felony offenses in 1997.

          It is
undisputed that counsel’s last contact with Wilcox occurred in 2002, seven
years before appellant’s trial, and that neither his previous attorney-client
relationship nor his business relationship with Wilcox—which concluded in 2000—was related to the prosecution of
appellant.  See Barbaro v. State, 115 S.W.3d 799, 801 (Tex. App.—Amarillo 2003,
pet. ref’d) (holding, “It is undisputed that the matters on which counsel
represented the witness ten years before were completely unrelated to the
criminal prosecution of appellant” and concluding no actual conflict of
interest existed); Charleston v. State,
33 S.W.3d 96, 101 (Tex. App.—Texarkana 2000, pet. ref’d) (“[Counsel] did not
represent [the robbery victim’s husband] and Charleston simultaneously, nor did
he represent the two on a substantially related matter.”); Fulgium v. State, 4 S.W.3d 107, 115 (Tex. App.—Waco 1999, pet.
ref’d) (“[G]iven the number of years elapsed since the prior representation and
lack of any relevance between his representation of [the State’s witness] and
his representation of Fulgium, this concern is completely dispelled.”).  There is no indication that trial counsel
obtained any confidential information during his previous relationship with
Wilcox that was relevant to appellant’s case or that could “be used in any way
to advance or impugn the interests of appellant, the witness or anyone
else.”  See Barbaro, 115 S.W.3d at 801 (citing Thompson v. State, 94 S.W.3d 11, 21–22 (Tex. App.—Houston [14th
Dist.] 2002, pet. ref’d)).

Furthermore, we note that, at the
guilt-innocence phase of the trial, trial counsel’s defensive strategy
primarily consisted of blaming the complainant, Wilcox’s brother, for the fatal
accident and contending that the complainant’s inability to avoid appellant’s
vehicle was due to his own intoxication. 
The record, therefore, does not support appellant’s contention that
counsel “perceived subtle influences” as a result of his prior representation
of Wilcox and the presence of the complainant’s family at trial that precluded
him from effectively representing appellant.[4]  See
Wolf v. State, 674 S.W.2d 831, 843 (Tex. App.—Corpus Christi 1984, pet.
ref’d) (“The record neither supports appellate counsel’s assertion that
appellant’s trial counsel had continuing loyalties or affection for Staton and
his family nor does the record show that trial counsel was submissive at
trial.”).

          “Having
represented a witness at a prior time does not alone mean that counsel is
required to make a choice between advancing his current client’s interests in a
fair trial [and] advancing other interests to the detriment of his client.  More is required before it can be said that a
conflict actually exists.”  Barbaro, 115 S.W.3d at 802.  Appellant contends that trial counsel’s prior
relationship with Wilcox presented a conflict because “Wilcox and his family
would benefit from the appellant’s conviction.”  Appellant does not demonstrate, however, that,
by previously representing Wilcox, trial counsel was required to make a choice
between advancing appellant’s interests and advancing Wilcox’s interests.  Acosta,
233 S.W.3d at 355.  Trial counsel’s
previous encounters with Wilcox occurred seven and nine years before
appellant’s trial, were completely unrelated to the prosecution of appellant,
and did not result in counsel’s obtaining any confidential information relevant
to appellant’s prosecution.  We therefore
conclude that any conflict of interest in this case is merely speculative and
thus cannot support an ineffective assistance claim.  See
Cuyler, 446 U.S. at 350, 100 S. Ct. at 1719; Meltzer, 180 S.W.3d at 256; Thompson,
94 S.W.3d at 20–21 (“[A]ppellant had to show some actual conflict, not merely a
speculative conflict of interest.”).  We
hold that because appellant cannot establish the “constitutional predicate”
that his trial counsel “actively represented conflicting interests,” he cannot
demonstrate that his counsel rendered ineffective assistance.  Cuyler,
446 U.S. at 349–50, 100 S. Ct. at 1719.

          We
overrule appellant’s sole issue.[5]

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Do
Not Publish.  Tex. R. App. P. 47.2(b).











[1]
          See Tex. Penal Code Ann.
§ 19.02(b)(3) (Vernon 2003).  The
underlying felony offense is driving while intoxicated, third offense.  See
id. § 49.09(b)(2) (Vernon Supp. 2010) (providing that
offense of driving while intoxicated is third degree felony if defendant had
been convicted on two previous occasions of offense relating to operation of
motor vehicle while intoxicated).

 





[2]
          Dr. Roger Mitchell, the
assistant Harris County Medical Examiner who performed the autopsy on the
complainant, testified that he took blood samples from three different areas of
the complainant’s body to perform the toxicology tests.  He stated that the 0.08 reading, from blood
in the vitreous humor, was likely the most accurate blood alcohol level due to
the potential contamination of the chest cavity and urine—the other two testing
sites—as a result
of the complainant’s injuries from the collision.





[3]
          The State contends that because
this case involves prior representation of a State’s witness, and not
concurrent representation, we should apply the Strickland standard for ineffective assistance claims and not Cuyler, which involved an attorney
concurrently representing co-defendants. 
See Thompson v. State, 94
S.W.3d 11, 19 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d) (applying Strickland instead of Cuyler when there were no co-defendants
and it was “not possible to identify from the face of the record an actual
conflict of interest arising from appellant’s counsel’s prior representation of
[another inmate implicated in the offense]”). 
We need not address this issue because, as the State also notes, both
standards require appellant to prove that an “actual conflict of interest”
existed, and we hold that appellant did not meet this burden.  See
Strickland v. Washington, 466 U.S. 668, 692, 104 S. Ct. 2052, 2067 (1984); Cuyler v. Sullivan, 446 U.S. 335, 348,
100 S. Ct. 1708, 1718 (1980); see also
Fulgium v. State, 4 S.W.3d 107, 114 (Tex. App.—Waco 1999, pet. ref’d)
(noting that appellant must demonstrate actual conflict of interest to satisfy Strickland in conflict of interest
case).  Moreover, in Acosta v. State, the Court of Criminal Appeals addressed whether Strickland or Cuyler should apply in conflict of interest cases that do not
involve “multiple representation” and noted that it “has never drawn any
distinction between ‘types’ of conflict of interest that may form the basis of
a claim of ineffective assistance of counsel.” 
233 S.W.3d 349, 355 (Tex. Crim. App. 2007).  The court held that “the proper standard by
which to analyze claims of ineffective assistance of counsel due to a conflict
of interest is the rule set out in Cuyler
v. Sullivan . . . .” 
Id. at 356.





[4]
          In determining if an actual
conflict of interest exists, courts also often consider whether counsel’s prior
representation of a State witness or a victim’s family member affects counsel’s
ability to properly cross-examine the witness or the victim.  See,
e.g., Charleston v. State, 33
S.W.3d 96, 101 (Tex. App.—Texarkana 2000, pet. ref’d) (“[Counsel] was not
hindered in his cross-examination of Mrs. Whatley [by his prior representation
of her husband].  He thoroughly examined
her regarding her ability to identify
Charleston . . . .”). 
Here, trial counsel did not cross-examine Wilcox.  However, in his motion for new trial
affidavit, counsel noted that Wilcox was emotional and only testified during
the guilt-innocence phase regarding identification of the complainant and
during the punishment phase regarding the complainant’s character and general
victim impact testimony.  Foregoing
cross-examination of a sympathetic witness in these circumstances is sound
trial strategy.  See, e.g., Miniel v. State,
831 S.W.2d 310, 324 (Tex. Crim. App. 1992) (“It has been said that ‘[o]ften,
the decision to not cross-examine a witness is the result of wisdom acquired by
experience in the combat of trial.’”) (quoting Coble v. State, 501 S.W.2d 344, 346 (Tex. Crim. App. 1973)); Valdes-Puerte v. State, 892 S.W.2d 103,
111 (Tex. App.—San Antonio 1994, no pet.) (“The decision whether or not to
cross-examine witnesses is a matter of trial strategy.”).





[5]
          In his brief, appellant
discusses multiple alleged errors that, he contends, reflect that his trial
counsel rendered ineffective assistance. 
Appellant discusses these alleged errors as examples of how trial
counsel’s alleged conflict of interest actually colored his performance at
trial.  See Cuyler, 446 U.S. at 348, 100 S. Ct. at 1718 (holding that
defendant seeking to establish ineffective assistance based on conflict of
interest must “demonstrate that an actual conflict of interest adversely
affected his lawyer’s performance”).  Appellant
does not assert that these errors are separate and distinct grounds for holding
that trial counsel was ineffective. 
Because we hold that trial counsel was not burdened by an actual
conflict of interest, we need not address the alleged errors raised by
counsel.  See id. at 350, 100 S. Ct. at 1719 (“But until a defendant shows
that his counsel actively represented conflicting interests, he has not
established the constitutional predicate for his claim of ineffective
assistance.”).  Similarly, because we
hold that appellant has not established a conflict of interest, we need not
address his argument that the record does not demonstrate that he waived his
right to conflict-free representation.