**David Michael THOMPSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–00–00899–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

June 27, 2002.

Discretionary Review Refused Nov. 27, 2002.

---

**23.** We need not reach Entex's third issue, asserted in the alternative.

Frank Blazek, Huntsville, for appellant.

Kelly Thompson Weeks, Huntsville, for appellee.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

Appellant David Michael Thompson challenges his conviction for possession of a deadly weapon in a penal institution. *See* TEX. PEN.CODE ANN. § 46.10. In three related points, he claims that his trial counsel's representation of both appellant and a prior client created an actual conflict of interest and denied appellant effective assistance of counsel. We affirm.

## I. Factual And Procedural Background

The incident giving rise to this case occurred in October 1998, within the prison walls where appellant was incarcerated. According to Officer Cynthia Joyner, who was working near appellant's cell, appellant began to curse and yell at her. Soon thereafter, Officer Virgil McMullen arrived and suggested that Officer Joyner take a short break to get a drink of water. Just as Officer Joyner returned to the cell block, appellant hurled a liquid substance through the bars of his cell and onto Officer McMullen, who was standing in front of appellant's cell. According to Officer McMullen, appellant urinated into a milk carton and then threw its contents at him. In response to appellant's actions, two other officers searched appellant's cell and found three sharp objects known as "shanks"—deadly weapons used by inmates to cause bodily injury and, in some cases, death.

Shortly after the incident, appellant signed a written confession in which he admitted possessing the shanks, purportedly for his own protection against the guards. A few weeks later, however, appellant wrote a letter to the prison warden, stating that the shanks were not his and that he had been holding them for someone else.

In March 1999, appellant was indicted with the offense of possession of a deadly weapon in a penal institution. In the jury trial that followed, appellant testified that while the guards were standing outside appellant's cell, inmate Oscar Torres pushed the shanks through holes in the wall connecting appellant's cell with Torres's cell. Appellant testified that he quickly hid the shanks and then threw the substance on Officer McMullen, so the officers would search his cell and find the shanks. Appellant further testified that his written confession was a lie and that he did not tell the officers Torres had pushed the shanks into his cell because he feared retaliation from Torres and his prison gang.

A jury found appellant guilty as charged and assessed punishment at sixteen years' confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant filed a motion for new trial based on an alleged conflict of interest which his counsel had raised twice and the court had rejected before trial.

About three weeks before the scheduled trial date, appellant's appointed counsel, Gail Huff, filed a motion to withdraw stating she had an actual conflict of interest. The trial court held a pretrial hearing on the matter. Huff stated she wished to withdraw as appellant's trial counsel based on an actual conflict of interest that existed as a result of her prior representation of another, unidentified inmate. When Huff refused to reveal the nature of the conflict or her prior client's name, the trial court denied her motion to withdraw. The trial court, however, stated that Huff would be allowed to withdraw as counsel for the other inmate, if necessary.

On June 26, 2000, the scheduled trial date, Huff reurged her motion to withdraw. Initially, she again refused to disclose the name of her other inmate client. As the hearing proceeded, however, she revealed the other inmate's name to the court reporter and, eventually, she wrote the name on a piece of paper and handed it to the trial judge. The inmate client was Oscar Torres—the same inmate appellant claimed placed the shanks in his cell. Still, Huff did not explain the nature of the actual conflict that she claimed existed as a result of her prior representation of Torres. Again, the trial court denied Huff's motion to withdraw as appellant's counsel, and the case proceeded to trial.

After the trial, appellant reasserted the conflict as grounds for a new trial, and the trial court denied the motion. Appellant now raises three related points challenging the trial court's rulings.

## II. ISSUES PRESENTED ON APPEAL

In his first point of error, appellant contends the trial court erred when it denied his trial counsel's motion to withdraw based on an actual conflict of interest. In his second point of error, appellant contends he was denied effective assistance of counsel because his trial counsel was impaired with an actual conflict of interest. In his third point of error, appellant argues the trial court erred in denying his motion for new trial based on an actual conflict of interest arising out of his trial counsel's prior representation of Torres. Appellant presents these points together with the same argument and authorities. Because all three points rest on whether appellant's trial counsel was impaired with an actual conflict of interest, thereby denying him effective assistance of counsel, we address these points together. *See Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim.App.1994) (stating that motion for new trial without hearing or any supporting proof is not enough to show that actual conflict of interest existed and trial court abused its discretion in denying the motion for new trial); *Lerma v. State*, 679 S.W.2d 488 (Tex.Crim.App.1982) (holding that failure to grant motion to withdraw in case of direct conflict of interest denies appellant his right to effective assistance of counsel). As a threshold issue, however, we must determine the applicable standard of review.

## III. STANDARD OF REVIEW: INEFFECTIVE ASSISTANCE OF COUNSEL BASED ON AN ACTUAL CONFLICT OF INTEREST

█ The Sixth Amendment to the United States Constitution guarantees in all criminal prosecutions that the accused shall have the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Monreal v. State*, 947 S.W.2d 559, 564 (Tex.Crim.App.1997); *Nethery v. State*, 29 S.W.3d 178, 188 (Tex. App.-Dallas 2000, pet. ref'd). The Sixth Amendment also guarantees a defendant the right to "conflict-free" representation. *Ex Parte McCormick*, 645 S.W.2d 801, 802 (Tex.Crim.App.1983). The mere physical presence of an attorney does not fulfill the Sixth Amendment's guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters. *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

The vast majority of claims alleging ineffective assistance of counsel fall within the familiar *Strickland* standard. *See Strickland*, 466 U.S. at 668, 104 S.Ct. 2052. Under this standard, to prove ineffective assistance of counsel, appellant must show that (1) counsel's representation or advice fell below objective standards of reasonableness; and (2) the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 688–92, 104 S.Ct. 2052. Moreover, the defendant bears the burden of proving his claims by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex.Crim.App.1998).

█ Although *Strickland* governs claims of ineffective assistance of counsel based on attorney error, certain claims of ineffective assistance of counsel involving conflicts of interest are controlled by *Cuyler v. Sullivan*, a case the United States Supreme Court decided four years before *Strickland*. *See Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Under *Cuyler*, a defendant demonstrates a violation of his right to reason-

ably effective assistance of counsel based on a conflict of interest if he can show that (1) his counsel was burdened by an actual conflict of interest; and (2) the conflict had an adverse effect on specific instances of counsel's performance. *Cuyler*, 446 U.S. at 348–50, 100 S.Ct. 1708. Until a defendant shows his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. *Id.* at 350, 100 S.Ct. 1708. A showing of the "possibility of a conflict of interest" is not sufficient to overturn a criminal conviction. *See id.* But, if an appellant shows an actual conflict, prejudice is presumed. *Id.* An actual conflict of interest exists if counsel is required to make a choice between advancing her client's interest in a fair trial or advancing other interests to the detriment of her client's interest. *See Monreal v. State*, 947 S.W.2d 559, 564 (Tex.Crim.App. 1997); *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir.2000). The conflict, however, must be more than merely speculative. *James v. State*, 763 S.W.2d 776, 778–79 (Tex.Crim.App.1989).

■■■■ The first step in our analysis is to decide which standard—*Cuyler* or *Strickland*—applies to the conflict of interest at issue in this case. The main difference between the *Strickland* test and the *Cuyler* test is that there is a lesser burden of proof when the claim of ineffective assistance of counsel involves a conflict of interest than when a claim is based on attorney error. *Monreal v. State*, 923 S.W.2d 61,64 (Tex.App.-San Antonio 1996), *aff'd*, 947 S.W.2d 559 (Tex.Crim.App.1997). Under *Strickland*, prejudice is not presumed. *See Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. Instead, the defendant must show there was error and the error was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. 2052. In contrast,

under *Cuyler*, a defendant need only show that his counsel's performance was "adversely affected" by a conflict of interest. *See Cuyler*, 446 U.S. at 349–50, 100 S.Ct. 1708.

The most likely scenario for a conflict of interest to develop is when an attorney represents two co-defendants in the same case, i.e., multiple or joint representation. *See Cuyler*, 446 U.S. at 335, 100 S.Ct. 1708. Neither the State nor appellant set forth which standard should apply in this case. Nor does our research reveal any Texas cases addressing the issue of which standard to apply in cases involving conflicts between the interests of an attorney's present client and the interests of a prior client. However, at least one Texas court has addressed the issue of whether *Cuyler* should apply beyond cases which involve joint representation of co-defendants in the same criminal proceeding and has declined to expand its application. *See Monreal*, 923 S.W.2d at 64.

The San Antonio Court of Appeals in *Monreal v. State* followed the Fifth Circuit's opinion in *Beets v. State*, 65 F.3d at 1258, 1271 (5th Cir.1995), declining to expand *Cuyler* to attorney self-interest conflicts. *See Monreal*, 923 S.W.2d. at 61. In *Beets*, the Fifth Circuit determined that the *Strickland* standard best addressed attorney self-interest conflicts. *See Beets*, 65 F.3d at 1271. According to the Fifth Circuit, "*Strickland* more appropriately gauges an attorney's conflict of interest that springs not from multiple client representation but from a conflict between the attorney's personal interest and that of his client." *Id.* The *Monreal* court observed that, "unlike those situations where an attorney undertakes to simultaneously represent multiple criminal defendants, the risk of harm or prejudice to the client is not as great." *See Monreal*, 923 S.W.2d at 61 (citing *Beets*, 65 F.3d at 1271). The

Texas Court of Criminal Appeals affirmed the *Monreal* court's decision. Though it did not expressly hold that *Cuyler* is not the appropriate standard for conflicts arising from something other than joint representation, it found "the Court of Appeals, [in applying *Strickland,*] applied the correct legal standard and considered all of the relevant factors." *See Monreal,* 947 S.W.2d at 565.

Recently, the United States Supreme Court impliedly addressed this precise issue in *Mickens v. Taylor,* 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). Mickens filed a petition for writ of habeas corpus, alleging, among other things, that he was denied effective assistance of counsel at his murder trial because one of his court-appointed attorneys had a conflict of interest arising from concurrent representation of another client. *Id.,* 535 U.S. at ———––——, 122 S.Ct. at 1239–40. Mickens claimed that his lead trial attorney, Bryan Saunders, was representing Mickens' juvenile victim, Hall, on an assault and concealed-weapons charge at the time of the murder. *Id.* Saunders had been appointed to represent Hall about ten days before Hall was murdered. *Id.* Saunders had met with Hall once for about twenty minutes. *Id.* Shortly after Hall's body was discovered, the juvenile court dismissed the charges against him, noting on the docket sheet that Hall was deceased. *Id.* The one-page docket sheet also listed Saunders as Hall's counsel. About a week later, the same trial court appointed Saun-

ders to represent Mickens, the man accused of murdering Hall. *Id.*

The question presented in Mickens's habeas petition was what a defendant must show in order to demonstrate a Sixth Amendment violation when the trial court failed to inquire into a potential conflict of interest about which it knew or reasonably should have known. *Id.,* 535 U.S. at ———, 122 S.Ct. at 1239. The *Mickens* court found the trial court's failure to make the mandated inquiry did not reduce the defendant's burden of proof and denied habeas corpus relief. *Id.,* 535 U.S. at ———– ———, 122 S.Ct. at 1243–45. Although the issue was not directly before the Court, Mickens's case was presented and argued on the assumption that *Cuyler* would be applicable, thus requiring a showing of deficient performance, but not requiring, as *Strickland* does in other ineffectiveness-of-counsel cases, a showing of probable effect upon the outcome of the trial. *Mickens,* 535 U.S. at ———– ———, 122 S.Ct. at 1245–46. The Court noted that this assumption was not unreasonable in light of the holdings of courts of appeals, which have applied *Cuyler* "unblinkingly" to "all kinds of alleged attorney ethical conflicts." *Mickens,* 535 U.S. at ———– ———, 122 S.Ct. at 1245–46 (citations omitted). The Court explicitly stated that the language of *Cuyler* itself does not clearly establish, or indeed even support, such an expansive application. *Id.*

In *Cuyler* and in previous cases,[1] the Supreme Court has stressed the high

---

1. In *Holloway v. Arkansas,* the Supreme Court considered the applicable standard in the context of an attorney's simultaneous representation of the interests of three co-defendants having interests in direct conflict with one another. 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Defense counsel objected that he could not adequately represent the divergent interests of three co-defendants. *Id.* at 478, 98 S.Ct. 1173. Without further

inquiry, the trial court denied defense counsel's motions for the appointment of separate counsel and refused to allow counsel to cross-examine any of the defendants on behalf of the other two. *Id.* The *Holloway* court deferred to the judgment of counsel regarding the existence of a disabling conflict, recognizing that a defense attorney is in the best position to determine when a conflict exits. *Id.* at 485, 98 S.Ct. 1173. The Supreme Court

probability of prejudice arising from multiple, concurrent representation, and the difficulty of proving prejudice. *Mickens*, 535 U.S. at —— – ——, 122 S.Ct. at 1245–46 (citations omitted). The Court drew a distinction between concurrent representation and prior representation by stating that even the Federal Rules of Criminal Procedure treat these two situations differently, requiring a trial court to inquire into the likelihood of conflict whenever jointly charged defendants are represented by a single attorney (Rule 44(c)), but not requiring such an inquiry when counsel previously represented another defendant in a substantially related matter,[2] even when the trial court is aware of the prior representation. *See id.* The Supreme Court explained that "[t]he purpose of our *Holloway* and *Cuyler* exceptions from the ordinary requirements of *Strickland*, however, is not to enforce the Canons of Legal Ethics, but to apply needed prophylaxis in situations where *Strickland* itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment right to counsel." *Mickens*, 535 U.S. at ——, 122 S.Ct. at 1246; *see also Nix v. Whiteside*, 475 U.S. 157, 165, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). However, because the Court resolved the case only on the grounds on which it was presented, the issue of whether *Cuyler* should be extended to cases of successive representation remains an open question. *See Mickens*,

535 U.S. at ——, 122 S.Ct. at 1246. In *Cuyler*, the Supreme Court discussed Fourteenth Amendment (and thereby Sixth Amendment) ineffective-assistance-of-counsel claims in the context of a defense lawyer who had a conflict of interest arising from representation of multiple clients. 446 U.S. at 335, 100 S.Ct. 1708. Texas follows the *Cuyler* analysis. *See Monreal*, 947 S.W.2d at 564–65. In *Cuyler*, two defense lawyers represented three defendants in three trials; the defendants were tried one at a time. *Id.* at 565. The defendant in the first trial, Sullivan, claimed on appeal that the lawyers compromised his defense by, among other things, not calling defense witnesses so that prosecutors would not learn their testimony for use in the two subsequent trials. *Id.* At a hearing, one of the lawyers admitted that his decision not to call defense witnesses was affected by his concern that revealing those witnesses' testimony would benefit the prosecution in the other two trials. *Id.* at 566. The Court acknowledged that Sullivan did not object to multiple representation until after trial. *Id.* Nevertheless, the Court found the Fourteenth Amendment was violated if Sullivan could "demonstrate that an actual conflict of interest [occurred that] adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348, 100 S.Ct. 1708.

 When a lawyer undertakes simultaneous representation of multiple criminal

---

presumed that the conflict, "which[the defendant] and his counsel tried to avoid by timely objections to the joint representation, undermined the adversarial process." *Id.* at 490, 98 S.Ct. 1173. This presumption was justified because joint representation of co-defendants with conflicting interests is inherently suspect, and because counsel's conflicting obligations to multiple defendants "effectively seal his lips on crucial matters" and make it difficult to measure the precise harm arising from counsel's errors. *Id. Holloway* thus creates an automatic reversal rule only when defense counsel is forced to represent co-

defendants over his timely objection, unless the trial court has determined that there is no conflict. *Id.* at 488, 98 S.Ct. 1173. Unlike *Holloway*, the case now before us does not involve *joint representation* of co-defendants. The alleged conflict is based on *successive representation*.

2. We note that the facts in our case do not even reveal whether appellant's counsel represented Torres in a matter that was substantially related to appellant's matter.

defendants, the risks of prejudice to one client or the other are so great that the law imposes an automatic presumption of prejudice. *Id.* at 349, 100 S.Ct. 1708. This prejudice is perhaps best illustrated in those cases in which there is a blame-shifting defense—one of the defendants claims the other committed the offense. *See Monreal*, 923 S.W.2d at 64. If a lawyer represents two or more co-defendants in the same matter, she is legally and ethically deprived of utilizing the time-honored defense of blaming the other defendant. *Id.* Under those circumstances, the automatic presumption of prejudice is quite valid. *Id.* However, that is not the situation now before us.

Appellant was charged with possession of a deadly weapon in a penal institution. There were no co-defendants. Moreover, it is not possible to identify from the face of the record an actual conflict of interest arising from appellant's counsel's prior representation of Torres. Given this gaping hole in our record, the Supreme Court's reasoning in *Mickens,* and the meaning behind the *Cuyler* test, we find that *Strickland,* not *Cuyler,* should apply. *See Mickens,* 535 U.S. at ——— ———, 122 S.Ct. at 1242–46; *Cuyler,* 446 U.S. at 335, 100 S.Ct. 1708; *see also Kegler v. State,* 16 S.W.3d 908, 912 (Tex.App.-Houston [14th Dist.] 2000, pet ref'd) (finding *Strickland* to be appropriate standard of review because defendant could not show actual conflict from record).

## IV. Ineffectiveness Under *Strickland*

To prove ineffective assistance of counsel under the *Strickland* standard, appellant must show not only that counsel's representation or advice fell below objective standards of reasonableness but also that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland,* 466

U.S. at 688–92, 104 S.Ct. 2052. Appellant must prove both prongs of *Strickland* by a preponderance of the evidence in order to prevail. *See Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim. App.1996).

■ Appellant claims he was denied effective assistance because his attorney had represented Torres on other charges unrelated to appellant's case. After representing Torres in an unrelated matter, Huff was appointed to represent appellant on the charge of possession of a deadly weapon in a penal institution. Appellant's defense was that Torres allegedly pushed the shanks into his cell, through a hole in the wall that divided the two cells, and appellant could not tell the guards the truth for fear of retaliation from Torres and his gang. Appellant claims Huff was impaired by a direct conflict because, on one hand, appellant had an interest in blaming Torres to possibly exculpate himself, or at least mitigate the seriousness of the offense; and, on the other hand, Torres had an interest in not being implicated in order to avoid the risk of disciplinary proceedings with the prison or possible prosecution in court.

■ Notably, appellant's only complaint on appeal is that his counsel was ineffective because she was impaired with an actual conflict of interest; appellant does not claim his trial counsel was ineffective in presenting the particulars of her alleged conflict. Consequently, appellant must show what information would have benefitted him and how his trial counsel could have represented him more effectively had counsel not been impaired with a conflict or if appellant would have had

entirely different trial counsel representing him.

 Absent special circumstances, unless the trial court knows or reasonably should know that a particular conflict of interest exists, it has no affirmative duty to make an inquiry. *See Calloway v. State,* 699 S.W.2d 824, 829–30 (Tex.Crim. App.1985). When a lawyer admits to a conflict of interest, the court should hold a hearing to explore that conflict. *Kelly v. State,* 640 S.W.2d 605, 611 (Tex.Crim.App. 1982). If the accused or his counsel make a timely objection and request separate counsel on the basis of a potential conflict of interest, the trial court must investigate or inquire about this request. *See Holloway,* 435 U.S. at 486–90, 98 S.Ct. 1173. When an attorney is unable to cross-examine a government witness or is hindered in such a cross-examination because of a privilege arising from counsel's prior representation of the witness, the defendant is denied effective representation as a matter of law. *United States v. Martinez,* 630 F.2d 361, 362 (5th Cir.1980).

 Huff filed a motion to withdraw as appellant's counsel in the case, and the trial court held a hearing on this motion. At this hearing, Huff claimed a conflict existed, but offered no explanation of the nature or particulars of it—not even a reference to the general nature of the conflict. Huff even refused to reveal the name of the other inmate until the day of the trial. Under these circumstances, the trial court was not obligated to conduct any further inquiries to ascertain whether appellant's counsel should have been removed. A mere assertion at trial that an actual conflict exists, without a more particularized indication of the nature of the conflict, does not relieve a defendant of the necessity of demonstrating that an actual conflict exists. *See Calloway,* 699 S.W.2d at 829–31.

The facts in this case are similar to the facts in *Wilson v. State,* 786 S.W.2d 74 (Tex.App.-El Paso 1990, no pet.). In that case, the defendant was charged with possession of cocaine with intent to deliver. *Id.* at 76. Wilson's attorney also represented the co-defendant, Goolsby. When Wilson's attorney realized there might be a conflict, the court appointed another attorney to represent Goolsby. However, Wilson's attorney stated a conflict of interest arose in representing Wilson during Wilson's trial, but that he could not reveal the nature of the conflict due to his continuing obligation to Goolsby. *Id.* The attorney claimed he was prevented from calling Goolsby as a witness to provide favorable and exculpatory evidence for Wilson because of the conflict of interest. *Id.* The *Wilson* court held that no conflict of interest was shown because Wilson's attorney's assertions with regard to his inability to use the testimony of Goolsby were entirely speculative and would not have aided Wilson. *Id.*

Here, appellant claims Torres not only would have admitted his ownership of the shanks but also would have testified that he gave them to appellant to hold temporarily. Torres was not called as a witness for the government or the defense and there is no indication in the record of what he would have said. The record does not even indicate that appellant's trial counsel wanted to call Torres as a witness for the defense or that she thought calling Torres would have been advisable absent the alleged conflict. Although appellant's counsel did not object on this basis, it is possible she may not have called Torres as a witness because Torres would have had to implicate himself in order to provide appellant with a possible defense. Even that would not have been sufficient, however, because appellant had to show some actual conflict, not merely a speculative conflict of

interest. *See James,* 763 S.W.2d at 778; *Wenzy v. State,* 855 S.W.2d 52, 56 (Tex. App.-Houston [14th Dist.] 1993, pet. ref'd). Even if Torres had been called, it is not at all clear that his testimony would have benefitted appellant.

Moreover, appellant's assertions with regard to his counsel's inability to cross-examine the witnesses about their knowledge of Torres are purely speculative. In order to determine whether appellant's attorney refrained from cross-examination in certain areas and whether her supposed inability to cross-examine more thoroughly could be considered detrimental to appellant, we must be able to discern from the record the nature of the information that could have been developed by counsel. Appellant does not cite to anything in the record that would evince any useful information that could have been uncovered or utilized through more effective cross-examination. Nor does the record show that the State's witnesses held information that would have been beneficial to appellant, but detrimental to Torres, e.g., that Torres was a member of a gang.

Appellant's motion for new trial merely asserted that a conflict of interest may have existed—it did not identify, much less explain, what the alleged conflict involved. Moreover, appellant did not attach any supporting affidavits to his motion for new trial. Although there was a hearing on the motion, no testimony was developed to show that Huff's past representation of Torres had anything to do with her decision not to cross-examine the State's witnesses. We are not aware of any confidential or privileged information Huff may have obtained during her representation of Torres or how she would have been forced to divulge such information in cross-examining the State's witnesses in appellant's case.

Nor does the record indicate whether or how an actual conflict prevented Huff from questioning appellant. During direct examination, appellant told his version of the events. He explained that the shanks belonged to Torres, not to him. He further testified that the reason he did not tell the officers the truth at the time was because he feared retaliation from Torres and his gang. Though appellant now asserts the defenses of duress and necessity, he did not indicate at trial that he even wished to raise these defenses and the evidence does not support either defense.

At best, the record raises a concern of a *possible* conflict of interest but not an *actual* conflict of interest.[3] Although the record indicates there could possibly be a conflict as a result of Huff's prior representation of Torres, the record is not clear as to what the representation of Torres involved. The trial court did everything it was required to do. Upon being informed that an actual conflict existed, the court conducted a hearing. Despite ample opportunity to identify and explain the alleged conflict, appellant's trial counsel refused to reveal even the general nature of

---

3. In some cases, courts have found enough evidence in the record to support an *actual* conflict of interest. *See Ex parte McCormick,* 645 S.W.2d 801, 803–06 (Tex.Crim.App.1983) (finding potential for conflict became actual conflict of interest due to defense counsel's trial strategy); *Ex parte Parham,* 611 S.W.2d 103, 104–05 (Tex.Crim.App.1981) (finding actual conflict of interest where one brother's testimony would exculpate the other by proving he did actual shooting in murder case).

In contrast, there is no evidence in this case that the testimony of either appellant or any of the state's witnesses would inculpate Torres or exculpate appellant. *See also Amaya v. State,* 677 S.W.2d 159, 161–62 (Tex.App.-Houston [1st Dist.] 1984, pet. ref'd) (finding actual conflict of interest when discrepancies between testimony of various witnesses were not exploited because it would have hurt other co-defendants).

the conflict or to explain the adverse impact, if any, on appellant as a result of counsel's prior representation of Torres. Without more particularized information, we cannot determine how or whether counsel was impaired in her representation of appellant. *See Fulgium v. State,* 4 S.W.3d 107 (Tex.App.-Waco 1999, pet ref'd) (holding that implied conflicts are insufficient to support claim of ineffective assistance).

 As for the prejudice prong under *Strickland,* under the facts this case, we cannot find that even if appellant would have had different counsel, or even if his trial counsel had acted differently, the result would have been any different. *See Strickland,* 466 U.S. at 688–92, 104 S.Ct. 2052. Appellant's claim that Torres would have given favorable testimony is speculative. Moreover, the jury could have found appellant guilty of possession of a deadly weapon in a penal institution regardless of who gave him the shanks or who owned the shanks because appellant signed a written confession admitting to possession of them. *See Brown v. State,* 732 S.W.2d 733, 734 (Tex.App.-Houston [14th] 1987, pet. ref'd). Likewise, appellant's own confession and letter to the prison warden effectively undermined any claim of duress. Nothing Torres could have said, even if called as a witness, could have exonerated appellant.

Appellant has not proven deficient performance by his trial counsel or a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. Thus, he has failed to satisfy either prong of *Strickland.* Because the record does not show that appellant's counsel was ineffective due to an actual conflict and because this case does not present a joint

representation situation as in *Cuyler*,[4] there has been no violation of appellant's right to reasonably effective assistance of counsel. Furthermore, the trial court did not err in denying the motion to withdraw and the motion for new trial, both of which were based on an alleged actual conflict of interest. *See Lerma,* 679 S.W.2d at 488; *Jordan,* 883 S.W.2d at 665. Accordingly, we overrule all of appellant's points of error.

Having found no error, we affirm the trial court's judgment.

---

4. In any event, even if we had applied *Cuyler,* instead of *Strickland,* appellant's claims would have failed because the record does not reveal an actual conflict—the requirement for *Cuyler's* first prong. *See Cuyler,* 446 U.S. at 348, 100 S.Ct. 1708.