**Affirmed and Memorandum Opinion filed August 20, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00398-CR

## MAPEL NTOKE BATEKI, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1682021**

## MEMORANDUM OPINION

A jury found appellant Mapel Ntoke Bateki guilty of aggravated robbery of complainant William Koetting. Tex. Penal Code Ann. § 29.03(a), (b) (felony of first degree). The jury assessed punishment at imprisonment for 33 years. Tex. Penal Code Ann. § 12.32(a). Appellant argues the trial court erred by: (1) denying his right to cross-examine and confront complainant about pending criminal charges; (2) denying the motion to withdraw filed by appellant's trial counsel; (3) allowing evidence in the punishment phase of an alleged plot formed by

appellant to smuggle drugs into jail during his trial; (4) allowing the courtroom deputy to testify about appellant's alleged plot to smuggle drugs; (5) excluding a jury instruction about the burden of proof for extraneous offenses and bad acts in the punishment-phase jury charge; and (6) denying appellant's requested jury instruction for the lesser-included offense of aggravated assault.

We affirm the judgment of the trial court as challenged on appeal.

## I.    BACKGROUND

In June 2020, complainant met appellant at a gas station by chance and saved his number anticipating a future purchase of illegal drugs. Complainant contacted appellant a few days later to arrange the purchase of illegal drugs. They met in a fast-food parking lot in southwest Houston. When he arrived, complainant got into appellant's car for a few minutes to complete the transaction.

At trial, complainant testified he sought to buy "weed" or marijuana. According to complainant, appellant tried to sell him a different drug, not the marijuana he alleges he requested. When complainant refused, he testified that appellant demanded all his cash and car keys and pointed a gun at complainant. Appellant also testified at trial. In contrast, appellant testified that complainant sought to buy "mask" or crack cocaine. He alleged that he provided complainant with the cocaine and that, instead of paying, complainant took the drugs and left.

The aftermath was caught, in part, on surveillance video. Appellant got out of his car and followed complainant into his car. Complainant testified that appellant "pistol whipped" complainant with appellant's gun and then shot complainant in the leg at point blank range as complainant tried to drive off. Although shot by appellant, complainant was able to drive away and leave the parking lot. He passed out from blood loss on the tollway and crashed his car.

2

After he shot complainant, appellant returned to his car and drove away. Complainant told one of the peace officers who responded to his crash that he was trying to buy "weed" and had been shot. Appellant was later found and charged with aggravated robbery.

Most of appellant's allegations of error on appeal stem from an incident that occurred during trial. Appellant's mother attempted to give appellant's trial counsel papers for her son. The attorney refused and appellant's mother put the papers in clothing that was supposed to go back to appellant. However, the courtroom deputy searched the clothing and located the papers. Recordings from jail introduced into evidence in the punishment stage reflect that appellant was trying to smuggle papers laced with drugs into the jail through the courthouse.

## II. ANALYSIS

### A. Cross-examination on pending criminal charges

In issue 1, appellant argues the trial court erred when it denied appellant the right to cross-examine and confront complainant about pending criminal charges. At pretrial, appellant made the trial court aware of three different pending charges against the complainant. One of the charges occurred two years after the offense at issue and a year before appellant's trial. The other two charges occurred just a few days before trial. Appellant argued that he was entitled to cross-examine complainant as to whether complainant received any favorable treatment with respect to his pending charges in exchange for his testimony in appellant's case.

The trial court denied appellant's request to cross-examine complainant about his pending charges because the trial court did not see "any connection between the charges pending . . . that are really logical or causal connections."

3

### 1. Applicable law

The right to confront one's accuser necessarily includes the right to cross-examine. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Exposing a witness's motivation to testify for or against the accused or the State is a proper and important purpose of cross-examination. *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998); *see also Carroll*, 916 S.W.2d at 498 ("This broad scope necessarily includes cross-examination concerning criminal charges pending against a witness and over which those in need of the witness'[s] testimony might be empowered to exercise control."). Parties are allowed great latitude to show "any fact which would or might tend to establish ill feeling, bias, motive and animus on the part of the witness." *London v. State*, 739 S.W.2d 842, 846 (Tex. Crim. App. 1987). But the trial court may limit cross-examination as inappropriate for several reasons. *Carroll*, 916 S.W.2d at 498 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (e.g., trial court may exercise discretion to prevent harassment, prejudice, confusion of issues, and marginally relevant interrogation)).

To impeach a witness with evidence of pending criminal actions, the proponent of the evidence must establish that the evidence is relevant. *Carpenter*, 979 S.W.2d at 634; *Carroll*, 916 S.W.2d at 494; *London*, 739 S.W.2d at 846–48. "Evidence that a witness is on probation, is facing pending charges, or has a prior juvenile record is not relevant for purposes of showing bias or a motive to testify absent some plausible connection between that fact and the witness's testimony." *Irby v. State*, 327 S.W.3d 138, 149 (Tex. Crim. App. 2010); *see also Carpenter*, 979 S.W.2d at 634–35 & n.5. The required "causal connection" is a matter of relevance. *See* Tex. R. Evid. 401; *Carpenter*, 979 S.W.2d at 634. The cross-examiner must show the relevance of the "vulnerable status" or other source

of bias to the witness's testimony. *Irby*, 327 S.W.3d at 151–52. We review this issue for abuse of discretion. *Id.* at 154.

## 2. No abuse of discretion

One of the pending charges—assault causing bodily injury—occurred two years after the offense involving appellant. The other two charges stemmed from the conduct the weekend before trial—DWI and evading arrest in a motor vehicle. Appellant admitted he was not aware of any plea deal given to complainant related to any of his pending charges in exchange for his testimony in appellant's case, but argued he should be entitled to cross-examine the complainant concerning whether his testimony might be affected by the pending charges. Appellant did not establish a causal connection between the pending charges against complainant and complainant's testimony against appellant. He did not make an offer of proof providing any further evidence to support his contention that complainant was motivated to testify in a certain way because of his vulnerable relationship with the State.

The State represented to the trial court that complainant had fully cooperated and been willing to testify before any of the pending charges arose. As an example, complainant appeared at the 2022 trial setting ready testify before the trial was continued. The State also represented that the prosecutor on appellant's case had no communication with prosecutors working on complainant's pending cases. Further, the State argued that complainant was shot by appellant and therefore possessed a motivation to testify independent of any pending charges he might have.

Though the constitutional right to confront witnesses encompasses "the opportunity to show that a witness is biased or that his testimony is exaggerated or unbelievable," a trial court "retains wide latitude to impose reasonable limits on

5

such cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant.'" *Irby*, 327 S.W.3d at 145 (quoting *Van Arsdall*, 475 U.S. at 679). Because appellant simply argued the mere existence of pending charges, we cannot say the trial court abused its discretion by refusing to permit cross-examination on complainant's pending criminal charges.

We overrule issue one.

## B. Denial of motion to withdraw

In issue two, appellant argues the trial court committed structural error by denying his trial counsel's motion to withdraw after it came to light that appellant was attempting to involve his counsel in criminal activity, i.e., appellant's attempt to smuggle papers laced with drugs into the jail. Appellant's trial counsel sought to withdraw from his representation of appellant because he was concerned that he could not "ethically and effectively go forward with the representation of" appellant after appellant tried to involve him in a crime.

The trial court denied the motion. Appellant argues the trial court committed a structural error by forcing appellant to accept an attorney who, on discovery of a serious conflict of interest, had expressed his inability to thereafter provide effective assistance.

### 1. Applicable law

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment guarantees not just the right to counsel, but the right to the reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686

(1984). Ineffective assistance of counsel may result when a counsel labors under a conflict of interest. *Id.* at 692. In such a situation, counsel may breach the duty of loyalty, perhaps the most basic of counsel's duties. *Id.*

Most claims of ineffective assistance of counsel are reviewed under the analytical framework set forth in *Strickland*. Although *Strickland* governs claims of ineffective assistance of counsel based on counsel's error, claims involving an actual conflict of interest are reviewed under *Cuyler v. Sullivan.*[1] 446 U.S. 335, 350 (1980); *see also Odelugo v. State*, 443 S.W.3d 131, 136 (Tex. Crim. App. 2014) ("[T]he proper standard by which to analyze claims of ineffective assistance of counsel due to a conflict of interest is the rule set out in *Cuyler v. Sullivan*.").

A defendant can demonstrate a violation of his right to the reasonably effective assistance of counsel if he can show (1) that his counsel was burdened by an actual conflict of interest and (2) that the conflict had an adverse effect on specific instances of counsel's performance. *Cuyler*, 446 U.S. at 348–350. An "actual conflict of interest" exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest. *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997).

### 2. Actual conflict of interest

Counsel stated that he could not ethically and effectively represent appellant because appellant's attempt to involve him in a crime would negatively affect their relationship. Although appellant's attempt to involve his counsel in criminal activity might affect trust between counsel and client, counsel never stated that he

---

[1] The critical difference between the *Cuyler* test and the *Strickland* test is there is a lesser burden when the claim of ineffective assistance of counsel involves a conflict of interest than when a claim is based on error. *Thompson v. State*, 94 S.W.3d 11, 16 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

could no longer represent appellant's interest due to a conflict with his own interests or the interests of another.

Counsel further stated that he would not be able to call appellant's mother as a witness because of her involvement in the alleged plot to smuggle drugs into the jail. However, based on her alleged involvement in the smuggling plot, appellant's mother likely could not have been called as a witness by any lawyer.

A criminal defendant's attempt to involve his lawyer in a criminal enterprise could result in a *possible* legal conflict between the two. However, here, there was no indication there was an *actual* conflict. None of the evidence at trial suggested that appellant's counsel was part of the plot or a willing participant in the plot. A potential conflict of interest is insufficient to reverse a conviction. *Cuyler*, 446 U.S. at 350. Therefore, appellant did not demonstrate his counsel was forced to choose between advancing appellant's interest in a fair trial and advancing other interests to his detriment. *See Monreal v. State*, 947 S.W.2d at 564.

### 3. Adverse effect on performance

Even if we were to conclude that appellant's attempt to involve his trial counsel in unlawful activity posed an actual conflict, we conclude there was no evidence of any adverse effect on counsel's representation of appellant. To meet the second prong of the *Cuyler* analysis, appellant needed to demonstrate what information would have benefitted him and how his trial counsel could have represented him more effectively had counsel not been impaired with a conflict. *See Thompson v. State*, 94 S.W.3d 11, 19–20 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

"In order to determine whether [defendant's] attorney refrained from cross-examination in certain areas and whether [his] supposed inability to

cross-examine more thoroughly could be considered detrimental to [defendant], we must be able to discern from the record the nature of the information that could have been developed by counsel." *Id.* at 21. Counsel called appellant as a witness in the guilt phase of trial and presented appellant's version of the events to the jury. Counsel also cross-examined witnesses during the punishment phase of trial and objected to the introduction of the extraneous-offense evidence of the plot to smuggle drug-laced papers into the courthouse. Although counsel did not call appellant's mother as a witness, appellant's trial counsel called appellant's father and uncle to testify as to appellant's character and mental-health issues.

On this record, there was no evidence counsel's representation was adversely affected or deficient; nor did appellant demonstrate "how or whether counsel was impaired in [his] representation of appellant." *Id.* at 22. We overrule issue two because appellant did not satisfy either prong of the *Cuyler* analysis. *See Cuyler*, 446 U.S. at 348–350.

## C.     Evidence of extraneous offenses or bad acts in punishment phase

In issue three, appellant argues the trial court erred by allowing evidence of the alleged drug-smuggling plot into the record because the plot was irrelevant and inadmissible as there was no proof of the alleged offense beyond a reasonable doubt. In response, the State argues appellant did not preserve this issue for appeal. Even if he had, the State further asserts that the plot to smuggle drugs into jail was admissible in the punishment phase of trial because it was probative of appellant's character. We begin with the question of whether appellant preserved this issue for appellate review.

After the State sought to have the trial court's courtroom deputy testify to his receipt of clothing from appellant's mother, his search of the clothing and his discovery of papers that were alleged to have contained drugs, appellant made the

9

following comments and objections:

> [COUNSEL FOR APPELLANT]: Well, let me say, Judge, I don't know that we even know that at this point. That's another thing I'd like to point out.
>
> THE COURT: And I understand.
>
> [COUNSEL FOR APPELLANT]: They haven't even tested the papers as far as I know.
>
> THE COURT: We don't. We don't.
>
> [COUNSEL FOR APPELLANT]: And that would be another objection I would make. We're talking about a possible drug deal. But my understanding is they submitted the paper, I guess, to a lab or whatever; but I don't think we know for certain that actually is the case. I think that's an important thing we need to know before we try to suggest something that we may know — it may not even be true. I mean, what if it comes back in and the paper doesn't have any drugs on it.
>
> THE COURT: The issue is what was being set up and what was being done. Deputy Bowers, can you please speak with the DA for a minute, please? Off the record.

Although he objected to various pieces of evidence that were admitted regarding the alleged drug-smuggling plot, appellant never objected to the introduction of "plot" as a whole. Although appellant *discussed* the lack of evidence of drugs, he never *objected* in the trial court as to the issue raised on appeal—that the entire plot was irrelevant and inadmissible at the punishment phase of trial because there was no proof "that the offense was proven beyond a reasonable doubt." Because the trial court had no opportunity to consider and rule on the legal issue raised on appeal, we conclude that appellant has not preserved the issue for appellate review. Tex. R. App. P. 33.1(a); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) (defendant fails to preserve error when contention urged on appeal does not match with specific complaint made in trial court).

We overrule issue three.

**D.     Testimony of courtroom deputy**

In issue four, appellant argues the trial court "fundamentally erred when it allowed [the] courtroom deputy to testify at punishment despite apparent unfair prejudice and resulting comment on the evidence." Appellant's arguments in issue four raise two separate claims of error on the part of the trial court: (1) comments made by the trial court to the jury about the courtroom deputy and (2) the trial court's decision to allow the courtroom deputy to testify about his search of appellant's clothes and the papers he discovered.

**1.     Applicable law**

And although appellant refers to fundamental error in his issue description, his argument addresses structural error. *See* Tex. R. Evid. 103(e) ("In criminal cases, a court may take notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved."). Fundamental errors are category-one and -two *Marin* errors. *Proenza v. State*, 541 S.W.3d 786, 795 (Tex. Crim. App. 2017) (citing *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993)). Fundamental error occurs when: (1) "rights [] widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system" are violated or when (2) rights are lost which can only be forfeited or waived by parties. *Marin*, 851 S.W.2d at 278–79.

Structural errors are a subset of fundamental error. Only federal constitutional errors can be "structural," though most federal constitutional errors are not structural. *Lake v. State*, 532 S.W.3d 408, 411 (Tex. Crim. App. 2017). The Supreme Court has recognized the following errors as structural: total deprivation of counsel at trial, a biased judge, the unlawful exclusion of members of the defendant's race from a grand jury, denial of the right to self-representation at trial, and denial of the right to a public trial. *Ex parte Fierro*, 934 S.W.2d 370, 372 (Tex.

11

Crim. App. 1996). An error is structural "only if it is the kind of error that affects the framework in which the trial takes place and defies analysis by harmless error standards trial." *Id*. In contrast, trial error may "be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless." *Id*. at 372–73.

Both fundamental and structural errors may be raised for the first time on appeal barring an express waiver of the right. *See Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004); *Marin*, 851 S.W.2d at 280.

## 2. Trial court's comments

Appellant highlights comments made by the trial court to the jury about the courtroom deputy including:

> You've already met Deputy Carter over there. I will tell you that if you are selected to sit on this jury, he's going to be the person who is in charge of you. If you haven't noticed, he's funny, he's got a good personality, and if you're really nice he'll even dance.

Appellant did not object to the comments made by the trial court. Therefore, we must consider whether they constitute structural or fundamental error, which appellant can raise for the first time on appeal. *See Mendez*, 138 S.W.3d at 342; *Marin*, 851 S.W.2d at 280. All the comments made by the trial court relating to the courtroom deputy were made before it was known that the deputy might be a witness. The comments appear intended to make the jury feel comfortable with the deputy who would be supervising their daily movements.

The court of criminal appeals has recognized the trial court has great influence over a jury and concluded remarks made to the jury may taint due process. *See Blue v. State*, 41 S.W.3d 129, 131–32 (Tex. Crim. App. 2000). However, we are not confronted by a situation in which the trial court knowingly

12

commented on evidence after it was received at trial. The trial court made comments to the jury about Deputy Carter's personality *before* Deputy Carter became a fact witness. Once the smuggling plot was revealed and the trial court was aware that Deputy Carter would need to testify, another deputy was placed in charge of the jury.

Although appellant argues the trial court's comments gave Deputy Carter more credibility with the jury, we cannot conclude the comments, at the time they were made, were fundamental or structural error such that the very framework of appellant's trial or due process was affected. Remarks by the trial court will constitute bias only if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Luu v. State*, 440 S.W.3d 123, 128–29 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Here, the comments made by the trial court did not reflect that a fair judgment was impossible or that appellant was deprived of his constitutional right to an impartial judge. *See id.*

Having concluded that the trial court's comments did not constitute fundamental or structural error, appellant did not preserve a complaint for appellate review as to the comments made by the trial court about Deputy Carter. *See* Tex. R. App. P. 33.1(a).

### 3. Overruling appellant's objection to Deputy Carter's testimony

Appellant properly and timely objected to the testimony of Deputy Carter arguing that his relationship and authority over the jury throughout the trial would give the deputy more credibility in front of the jury. Although in the trial court appellant did not cite any specific rule, he argues on appeal that his objection was effectively a Rule 403 objection. *See* Tex. R. Evid. 403 (relevant evidence may be excluded if probative value is outweighed by unfair prejudice).

The purpose of a punishment proceeding is not to prove guilt, but instead to allow a jury to assess punishment in line with the objectives of the Penal Code. *Rogers v. State,* 991 S.W.2d 263, 266 (Tex. Crim. App. 1999); *see generally* Tex. Penal Code Ann. § 1.02(1) (expressing general purposes of Penal Code). The test for relevancy is much broader during the punishment phase because it allows a jury to consider more evidence in exercising its discretion to assess punishment within the appropriate range. *See Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008) ("When the jury assesses punishment, it must be able to tailor the sentence to the particular defendant, and relevance is simply a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.").

A Rule 403 objection requires that the trial court balance the probative value of the evidence against its potentially prejudicial effect. *Montgomery v. State,* 810 S.W.2d 372, 388–90 (Tex. Crim. App. 1990 & 1991) (op. on reh'g). Such a balancing test includes, but is not limited to, four factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Id.* at 389–90; *see also Sunbury v. State,* 88 S.W.3d 229, 235 (Tex. Crim. App. 2002) (suggesting in dicta that *Montgomery* factors apply to Rule 403 decisions on punishment evidence).

We conclude appellant's Rule 403 arguments are without merit. Although Deputy Carter's testimony was undoubtedly prejudicial, the trial court did not abuse its discretion in concluding that its probative value was not substantially outweighed by the danger of unfair prejudice. Deputy Carter's testimony as to part of the smuggling plot was highly probative of appellant's character and thus important in giving complete information to the jury so that it could tailor an

14

appropriate sentence. *See Erazo v. State,* 144 S.W.3d 487, 491 (Tex. Crim. App. 2004). Moreover, Deputy Carter was the only person who searched appellant's clothing and found the papers. The State had no other way to introduce the evidence. Finally, Deputy Carter's testimony was very brief and simply established that appellant's mother handed him clothing in which he found at least two discolored sheets of paper.

We conclude the trial court did not abuse it discretion by overruling appellant's objection to the testimony of Deputy Carter as unfairly prejudicial. We overrule issue four.

## E.     Jury-charge error

In issue five, appellant argues the trial erred by failing to instruct the jury sua sponte regarding the standard of proof applicable to extraneous offenses and bad acts in the punishment phase of trial.

### 1.     Standard of review

A review of alleged jury-charge error involves a two-step analysis. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). First, we must determine whether the charge contains any actual error; second, if there is actual error, we must determine whether the error resulted in sufficient harm to require reversal. *Ngo*, 175 S.W.3d at 744; *Abdnor*, 871 S.W.2d at 731–32. If the defendant preserved the error by timely objecting to the charge, an appellate court will reverse so long as the defendant demonstrates that he suffered some harm. *Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). By contrast, if a defendant does not properly preserve error by objection, any error in the charge "should be reviewed only for 'egregious harm' under *Almanza*." *Madden v. State*, 242 S.W.3d 504, 513 (Tex.

Crim. App. 2007) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984 & 1985)).

## 2. Applicable law

Code of Criminal Procedure article 37.07, section 3(a)(1) provides,

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). Because "Article 37.07 is 'the law applicable' to all non-capital punishment proceedings[,] . . . the trial judge must sua sponte instruct the jury at the punishment phase concerning that law, including the fact that the State must prove any extraneous offenses beyond a reasonable doubt." *Delgado v. State*, 235 S.W.3d 244, 252 (Tex. Crim. App. 2007); *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000); *see also* Tex. Code Crim. Proc. Ann. art. 36.14 (trial court shall include in jury charge "the law applicable to the case"). The trial court has the responsibility to provide a reasonable-doubt instruction sua sponte. *See Huizar*, 12 S.W.3d at 483–84.

## 3. Harm analysis

The trial court did not include a reasonable-doubt instruction in the charge. Therefore, we hold that the trial court erred when it did not include the extraneous-offense instruction in the jury charge.

16

Having found charge error, we next analyze whether the error caused appellant to suffer egregious harm. "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). "To be reversible, any unpreserved jury-charge error must result in egregious harm which affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006) (citations and internal quotation marks omitted). In *Almanza*, the court of criminal appeals outlined four factors that reviewing courts should consider when determining whether a jury-charge error resulted in egregious harm: "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

### *The entire jury charge*

First, we consider the entire jury charge. The punishment charge did not include an instruction about the State's burden of proof regarding extraneous-offense evidence. The punishment charge did, however, include the following instruction: "The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant." The jury was further instructed that they "may take into consideration all the facts shown by the evidence admitted before you in the full trial of this case and the law as submitted to you in this charge." The jury charge in the guilt-innocence phase contained an instruction explaining the jury must find from the evidence beyond a reasonable doubt that appellant committed the charged offense.

We conclude the general jury-charge instruction is a consideration that

weighs neither for nor against the conclusion that appellant suffered egregious harm. *See Loge v. State*, 550 S.W.3d 366, 384 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (lack-of-reasonable-doubt instruction in punishment phase not egregious harm when "the charge generally told the jury that the State had the burden of proof throughout the trial"); *Cf. Zarco v. State*, 210 S.W.3d 816, 827 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (no egregious harm in absence of reasonable-doubt instruction although no new extraneous-offense evidence was received in punishment phase).

*The state of the evidence*

Next, we evaluate the state of the evidence. In determining whether the charge error caused actual harm, we consider whether the extraneous-offense evidence received during the punishment phase was "clear, strong, direct and unimpeached" such that the jury charge "would not have made a difference in how the jury considered the evidence." *Martinez v. State*, 313 S.W.3d 358, 368 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

One of the investigating officers, Detective Le, testified that he listened to calls made from appellant's inmate identification number and heard evidence of the smuggling plot. Audio was played for the jury of a telephone call from appellant to his mother, as well as other calls made by another inmate who used appellant's inmate identification number to call both a dealer as well as appellant's mother. The courtroom deputy also testified that he searched clothes intended for appellant given to him by appellant's mother and found papers in them. Two of the sheets were blank and appeared to be yellowed. The testimony "was clear, strong, direct and unimpeached" such that the jury charge "would not have made a difference in how the jury considered the evidence." *See Orellana v. State*, 489 S.W.3d 537, 543 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Martinez*,

18

313 S.W.3d at 368. Appellant did not present any evidence challenging the testimony or evidence presented regarding the alleged smuggling plot.

Considering the "clear, strong, direct and unimpeached" testimony presented by the State's witnesses in the punishment phase, we conclude it is unlikely an extraneous-offense instruction would have changed how the jury considered the evidence. *See Martinez*, 313 S.W.3d at 368. It is, therefore, less likely that the jury-charge error caused appellant harm. *See Cosio*, 353 S.W.3d at 778. Given the record, we conclude the second factor weighs against a conclusion of egregious harm.

### *The parties' arguments*

We next consider whether either parties' arguments during the trial "exacerbated or ameliorated error in the charge." *Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015). Here, the record shows neither party referenced nor misstated the State's burden of proof regarding the extraneous-offense evidence.

Appellant's closing argument focused on seeking probation and, like the appellant in *Martinez*, did not "mount any serious challenge to the extraneous offenses." *Id*. at 369. His closing arguments effectively conceded the drug-smuggling plot and argued that his mother had enabled him to behave badly:

> You know, this issue about — you have heard there was testimony that supposedly his mother was trying to smuggle some drugs into the jail, I guess, on a piece of paper is what the testimony was.
>
> . . . .
>
> First of all, obviously the mother is not the best influence in his life. The mother, she is smuggling drugs. And I'm not saying he's not to blame, but I am talking about the mother right now. The mother is literally bringing drugs to the courtroom for him to have in jail. I mean, what does that say? I mean, you have heard the word enabler. I

mean, that to me sounds — she's just an enabler out to the ozone, in my opinion.

The State's closing focused on the escalation in appellant's behavior over time, as appellant had multiple prior misdemeanor convictions to which he stipulated at trial. The State referenced the fact that appellant had received probation several times for his prior offenses and yet continued to engage in violent and dangerous behaviors. The offense against complainant was committed with a gun that appellant was not legally allowed to possess under the conditions of his probation. The State discussed the severity of the underlying offenses and appellant's actions in shooting complainant at some length. The State did also address the extraneous-offense evidence challenged on appeal by arguing:

> And while he's on trial for a first degree felony, what did we hear on those jail calls? While you and I are sitting here working, what is he doing? He's convincing his mom to bring drugs into the jail so that he can deal drugs inside the jail.

> He had zero remorse. He's putting zero effort to just be a good person. Zero effort to be a contributing member of society.

The State then suggested the jury start in the middle of the punishment range. *See Martinez*, 313 S.W.3d at 368–69 (inclusion of extraneous-offense evidence as part of general theme of appellant's character did not weigh in favor of finding egregious harm).

Considering the State gave multiple reasons for requesting the mid-range of punishment unrelated to the extraneous offense, and the focus of the State's arguments was on appellant's escalating violence, we conclude that the arguments of counsel weigh against a conclusion of egregious harm. *See Orellana*, 489 S.W.3d at 545; *Martinez*, 313 S.W.3d at 369.

20

*Other relevant information*

Among the other relevant information that we can consider is the severity of the punishment assessed. *See Loge*, 550 S.W.3d at 385. Here, the jury assessed punishment at imprisonment for 33 years, which is in the middle of the statutory range. We conclude the severity of the sentence does not weigh in favor of a conclusion that appellant suffered egregious harm.

*No egregious harm shown*

Applying the egregious-harm standard to this record, we conclude that a review of all relevant factors shows that appellant was not egregiously harmed by the omission of a reasonable-doubt instruction regarding evidence of the extraneous offense—smuggling drugs into the courthouse—during the punishment phase. The charge error did not affect the very basis of the case, deprive appellant of a valuable right, or vitally affect a defensive theory. *See Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011); *Loge*, 550 S.W.3d at 385–86.

We overrule issue five.

## F.  Lesser-included-offense instruction

In issue six, appellant argues the trial court erred by denying his requested jury instruction for the lesser-included offense of aggravated assault. Maintaining that the jury could have been unsure about whether appellant intended to commit theft, appellant argues the trial court was required to instruct the jury on aggravated assault. He further asserts there was no evidence that appellant ever tried to possess, or did possess, any of complainant's property. Therefore, appellant asserts there was more than a scintilla of evidence that was consistent with a finding that appellant was guilty only of the aggravated assault.

21

### 1. Standard of review and applicable law

We review a trial court's refusal to submit a lesser-included-offense instruction for an abuse of discretion. *See Chavez v. State*, 666 S.W.3d 772, 776–77 (Tex. Crim. App. 2023).

Whether a defendant is entitled to a lesser-included-offense instruction turns on a two-part test. *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). First, we compare the statutory elements of the alleged lesser offense with the statutory elements of the greater offense and any descriptive averments in the indictment. *Safian v. State*, 543 S.W.3d 216, 220 (Tex. Crim. App. 2018). If proof of the lesser offense is included within proof of the greater offense, the first step has been satisfied. *Id*.; Tex. Code Crim. Proc. Ann. art. 37.09(1). Second, there must be evidence from which a rational jury could find the defendant guilty of only the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006).

The court of criminal appeals has said that the guilty-only requirement is met if there is affirmative evidence of a factual dispute that raises the lesser offense and rebuts or negates other evidence establishing the greater offense. *Roy v. State*, 509 S.W.3d 315, 319 (Tex. Crim. App. 2017). But the evidence must be directly germane to the lesser-included offense and present the lesser-included offense as a valid, rational alternative to the greater offense. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). "[I]f the defendant presents evidence that he committed no offense at all . . . or if he presents no evidence . . . and there is no evidence otherwise raising the issue, a charge on [a] lesser offense . . . is not required." *Chavez*, 666 S.W.3d at 777 (quoting *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985)).

## 2. Application to facts

Aggravated assault may be a lesser-included offense of aggravated robbery, depending on the facts proved. *Ex parte Denton*, 399 S.W.3d 540, 545 (Tex. Crim. App. 2013). The parties both agree, on the facts in this case, that aggravated assault is a lesser-included offense of aggravated robbery.[2] Therefore, we turn to the question of whether any evidence exists in the record that would permit a rational jury to find appellant is guilty only of aggravated assault.

At trial, appellant argued to the trial court that if the jury did not believe complainant's testimony that a robbery took place, but did believe that an aggravated assault took place, that he was entitled to the lesser-included-offense instruction. On appeal, appellant reasserts the argument that a reasonable jury might have disbelieved appellant and was unsure about whether a robbery took place. However, the court of criminal appeals has clearly held the mere disbelief of evidence "establishing commission of the greater offense" is insufficient by itself to justify submission of a lesser offense. *Chavez*, 666 S.W.3d at 777 ("This is because the disbelief of evidence is not evidence.").

Neither in his argument in this court or in the trial court did appellant cite to any evidence supporting a finding by the jury that appellant was guilty of *only* aggravated assault. Although he testified during the guilt-innocence phase of trial, appellant testified that he did not have gun, did not shoot complainant, did not

---

[2] The State's indictment alleges that in the "course of committing theft of property owned by [complainant], and with intent to obtain and maintain control of the property, [appellant did] intentionally and knowingly threaten and place [complainant] in fear of imminent bodily injury and death, and [appellant] did then and there use and exhibit a deadly weapon, namely, a firearm." Given that proof a person intentionally, knowingly, or recklessly caused serious bodily injury to another or that he used a deadly weapon in the commission of an assault establishes the offense of aggravated assault, we agree with the parties that aggravated assault is a lesser-included offense of aggravated robbery here. Tex. Penal Code Ann. §§ 22.02 (assault), 29.03 (aggravated robbery).

23

know who did, and did not intend to rob or harm complainant. He further testified that appellant punched him and assaulted him first. Appellant's defense was that complainant took drugs from him without paying and he alleges he pursued complainant to recover the drugs. None of appellant's testimony establishes any evidence that appellant was guilty only of an aggravated assault.

The other evidence on this issue in the record is complainant's testimony. Complainant testified that when he got into appellant's car to purchase drugs, he got out his money and was then offered something other than the drug he was seeking. Complainant testified at that point appellant pulled out appellant's gun and threatened complainant while demanding complainant's money and car keys. Given the evidence received at trial, there is no evidence that supports a conclusion that appellant intended to commit only an aggravated assault. Appellant further cites no evidence in the record reflecting that he was guilty of the lesser offense, but not the greater. Therefore, we conclude appellant did not meet the second part of the *Rosseau* test requiring evidence such that a rational jury could find appellant guilty of only the lesser offense.

We overrule issue six.

### III.   CONCLUSION

We affirm the judgment of the trial court as challenged on appeal.


/s/      Charles A. Spain
Justice

Panel consists of Justices Wise, Spain, and Hassan.

Do Not Publish—Tex. R. App. P. 47.2(b).