**Carlos NAVEJAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–86–305–CR.**

Court of Appeals of Texas,
Corpus Christi.

April 16, 1987.

Rehearing Denied May 14, 1987.

Alfredo Jimenez, Corpus Christi, for appellant.

Grant Jones, Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

Appellant appeals his conviction for burglary of a habitation. Punishment, enhanced by two previous felony convictions, was assessed at eighty years. He brings points of error challenging the sufficiency of the evidence and complaining he was denied effective assistance of counsel. We affirm.

In reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Gardner v. State,* 699 S.W.2d 831, 836 (Tex.Crim.App.1985); *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App. 1984).

The essential elements of the offense of burglary of a habitation are: (1) a person; (2) without the effective consent of the owner; (3) enters a habitation; (4) with the intent to commit a theft, or does commit or attempt to commit a theft. Tex. Penal Code Ann. § 30.02(a)(1), (3) (Vernon 1974).

The State's evidence of guilt reflects the following. On April 25, 1986, the victim, Ronald Berglund, returned to his home in the early afternoon and found an unfamiliar station wagon parked in his driveway. Berglund asked the occupant, David Figueroa, why he was parked there. Figueroa explained that he was there with two other men who were looking at a paint job on the house next door. Berglund walked behind the house next door and found no one there. When he returned to the station wagon, Figueroa fled. Berglund then noticed two men walking through a vacant lot several lots away from his home. He then walked behind his own home and saw the curtains for the sliding glass door flying out. This door had been locked, but was now open. He had not given anyone consent to enter his home. He asked a neighbor to summon police.

When Berglund entered his house, he found the lock on the sliding glass door had been broken and the house ransacked. He found a portable television, which he kept in the bedroom, had been unplugged, the cord wrapped up, and the television set in the living room next to the door. He also found some jewelry missing. Two of his young son's dresser drawers containing socks had been emptied out on the floor. Police officers later found two socks in the field behind Berglund's house, which Berglund identified as belonging to his son.

Ronald Perez worked at Daniel's Plumbing which was located behind the Berglund home. At about one o'clock on the day in question, Perez was in the back of the plumbing warehouse eating lunch. He heard dogs barking and then a crash, which he thought was peculiar. He looked up and saw two men coming out of the sliding glass door of Berglund's home. Perez looked to see if the two men were carrying

anything, but he only noticed that they had socks or gloves on their hands.

Perez lost sight of the two men when he went and asked his supervisor to call the police because he suspected a burglary. Perez immediately got into a company van and proceeded to follow the two men. Another employee jumped the fence and looked for the suspects on foot. Perez drove in the general area where he believed the suspects had gone. He picked up the other employee and they spotted the suspects crossing a large open field.

When asked how he knew these were the same two men he had seen coming out of Berglund's home, Perez replied, "[b]ecause one of them was wearing sunglasses and I recognized their clothing and it was the same two guys." There were no other men walking in that area at that time. Perez described the men to police as Hispanic males. Both had mustaches and were dark complected. One was shorter than the other. Both had dark hair but one had wiry hair and the other had straight hair. One man was wearing tennis shoes and the other was wearing black, shiny shoes with pointed ends.

Perez followed the two men to a neighborhood barber shop. Perez watched the suspects as they went into the barber shop and then came out and walked across the street and entered a house. Perez observed them "talking to this guy about four, five minutes," then they got into a vehicle and drove away. Perez followed the vehicle until it pulled over to the side of the road. It had apparently run out of gas. The suspects then flagged down an El Camino, jumped in the back and spoke to the driver. The El Camino then drove away. Perez followed them. He testified that, when he tried to get a better look at the men, they hid their faces.

The El Camino stopped at a red light and the two suspects jumped out and ran behind a Circle K store. Perez drove down the street near the store, Chula Vista Street, but lost sight of the two men. Although Perez testified to all of the foregoing, he was never able to positively identify either suspect.

Rosendo Ramirez was the owner of the barber shop the two men had entered. On the date in question, he had been at his shop all day. He testified that shortly after one o'clock that day, two men came into his shop. One man washed his face and wet and combed his hair. They asked Ramirez for a ride to Chula Vista Street. Ramirez declined. He saw them leave his shop and go to a nearby house and leave in a car.

Ramirez testified he only recognized one of the men, the appellant, because he had seen him on two prior occasions. He made an in-court identification of appellant as one of the men in his barber shop that day. He told police at the time that he could only remember the man's last name, Navejar. Ramirez also testified that he picked appellant out of a photo lineup on the day in question.

Officer C.T. Acevedo testified that he investigated this incident. He followed tracks leading from Berglund's home into a vacant field. He found the socks there and testified that he knew from experience that burglars often use things like socks or gloves during a burglary to cover their hands so that they will not leave fingerprints.

Perez showed Acevedo the route along which he had followed the suspects. Acevedo went to appellant's residence on Chula Vista Street. Appellant consented to a search of his residence, which revealed nothing. Acevedo testified that appellant was wearing tennis shoes, but he had no mustache. However, appellant appeared to him to have just finished shaving. He said appellant had a "little blood on his upper lips," and his upper lip was lighter than the rest of his face.

In order to sustain a conviction based on circumstantial evidence, as in this case, the evidence of guilt must exclude every other reasonable hypothesis except that of the guilt of the accused. *Burns v. State*, 676 S.W.2d 118, 120 (Tex.Crim.App.1984); *Del Rio v. State*, 664 S.W.2d 379, 381 (Tex.App. —Corpus Christi 1983, no pet.). Proof amounting to only a strong suspicion or mere probability of guilt is insufficient.

*Del Rio,* at 381. However, every fact need not point directly and independently to the guilt of the accused, if the cumulative force of all the incriminating circumstances is sufficient to warrant the conclusion that the accused is guilty. *Wright v. State,* 644 S.W.2d 525, 529 (Tex.App.—Corpus Christi 1982, no pet.).

■ Appellant argues that the State did not present sufficient evidence to establish that appellant was one of the burgulars. He notes that none of the property taken was found in his possession, the vehicle at the scene was not his, no fingerprints were found at the scene, and no one could identify him at the scene. He argues that Perez's failure to positively identify him at the scene gives rise to the hypothesis that he was not one of the burglars. We disagree.

We find that the evidence of appellant's guilt amounts to more than just a strong suspicion or mere probability that appellant was one of the burglars. The cumulative force of all the incriminating evidence was sufficient to warrant the conclusion of guilt. Point of error one is overruled.

In his second point of error, appellant contends that he did not receive effective assistance of counsel. Appellant argues his trial counsel made mistakes which prevented him from receiving a fair trial. Specifically, appellant complains that his trial counsel discussed appellant's two previous felony convictions during jury voir dire, allowed appellant to testify, and moved, before the charge in the guilt phase, for an instructed verdict to dismiss the enhancement paragraphs of the indictment. No hearing on this issue was conducted in the trial court.

■ The test for determining if an accused has been denied effective assistance of counsel is whether (1) counsel's performance was deficient, and (2) whether there is a reasonable probability that, but for counsel's unprofessional errors, the result in the trial court would have been different. *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex.Crim.App.1986); *Moore v. State,* 700 S.W.2d 193, 205 (Tex.Crim.App.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1167, 89

L.Ed.2d 289 (1986), *citing, Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ingham v. State,* 679 S.W.2d 503, 508–09 (Tex.Crim. App.1984); *see also Hernandez v. State,* 726 S.W.2d 53, 56 (Tex.Crim.App.1986). An accused is not entitled to errorless or perfect counsel, only reasonably effective counsel. Generally, isolated errors do not amount to ineffective assistance, for we must evaluate counsel's performance based upon the facts of the particular case. Appellant bears the burden of proof on each prong of this test.

■ The indictment in this case also alleged that appellant had been previously convicted of two felonies, possession of marijuana on July 21, 1967, and burglary of a habitation on November 19, 1981. Thus, appellant faced a possible maximum sentence of life for this third felony. During jury voir dire, appellant's counsel told the panel that there was a second part of the indictment which alleged appellant had been convicted of two prior felonies. He noted that the stiff punishment involved made this a difficult and very serious case. He explained that appellant's first conviction was for possessing four marijuana cigarettes, but that appellant was convicted prior to the time that this offense was "decriminalized."

He told the jury panel that because of his record appellant may not be considered a "nice guy," but that was not the question before them. The issue, he said, was whether appellant committed this burglary. He then asked the panel whether they could judge the case based only upon the evidence of the burglary itself and not on appellant's past behavior. None of the panel members stated that they could not view the case solely on the evidence of the alleged offense.

During the State's case in chief, appellant's attorney cross-examined the State's witnesses extensively. He thoroughly questioned Berglund and Perez regarding their inability to identify appellant as one of the burglars. He impeached Perez' ability to see the events he testified to. He

questioned Ramirez about his identification of appellant.

 Defense counsel presented several witnesses who testified favorably for appellant. Appellant took the stand and testified that he did not give Figueroa a ride, did not go to Berglund's home, did not burglarize Berglund's home, and did not go to the barber shop that day. On cross-examination, the prosecution established that appellant had been previously convicted of three felonies and had served time in the penitentiary. Appellant admitted that he had been a burglar, and had been previously convicted of burglarizing another house and a restaurant.

Defense counsel established that appellant's first conviction occurred when he was nineteen years old, and that he had served four years for possessing four marijuana cigarettes. He also established that appellant had plead guilty to the two previous burglary charges. Appellant explained that he was not pleading guilty to this burglary charge because he did not commit this burglary, as he had the other two.

 After both sides rested in the guilt phase, defense counsel, outside the presence of the jury, made a motion for instructed verdict to dismiss the enhancement paragraphs of the indictment because the State had not proved the prior convictions. Counsel pointed out that the charge on the indictment read "Burglary of a habitation and habitual felony offender." Counsel argued the habitual offender portion was "really a part of the indictment and not just part of the punishment phase." The motion was denied. The charge submitted to the jury did not mention the enhancement portions of the indictment. There is nothing in the record to reflect that the jury was allowed to take the indictment with them into the jury room.

It is clear from the record that defense counsel was aware that enhancement allegations are only relevant during the punishment phase. Counsel was obviously objecting to the habitual felony offender label on the indictment.

The State's evidence on identity in this case was weak. The case was primarily based on circumstantial evidence. Defense counsel, in his professional judgment, obviously believed that appellant should take the stand and deny any involvement in the offense. Counsel offered the testimony of Figueroa who was present at the incident and who said that appellant was not involved. If appellant was to testify, his previous felony convictions were relevant and admissible. *See Cisneros v. State,* 692 S.W.2d 78, 83 (Tex.Crim.App.1985); Tex.R. Crim.Evid. 609. Clearly, defense counsel believed it was best to be "up front" with the jury regarding appellant's criminal record from the beginning of the trial. He informed the jury of appellant's record in voir dire and received their commitment that they would judge the case based on the evidence and not on appellant's record.

We cannot say that defense counsel's trial strategy was erroneous or unreasonable under the circumstances. Counsel's misplaced motion was a minor, isolated mistake which in no way harmed appellant. Counsel demonstrated a thorough grasp of the facts of this case and held the State to its strict burden of proof. Based upon this record, we find appellant was afforded reasonably effective assistance of counsel.

Appellant's points of error are overruled.

The judgment of the trial court is AFFIRMED.