# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00581-CR

---

**Victor Barrera Morones, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 33RD DISTRICT COURT OF BURNET COUNTY**
**NO. 53919, THE HONORABLE J. ALLAN GARRETT, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Victor Barrera Morones was charged with indecency with a child by contact. *See* Tex. Penal Code § 21.11(a)(1), (d). The State also alleged that he had previously been convicted of the felony offenses of burglary of a habitation and conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act subjecting him to an enhanced punishment range of 25 years to life. *See* 18 U.S.C. § 1962(d); Tex. Penal Code § 30.02; *see also* Tex. Penal Code § 12.42 (enhancing for punishment purposes offense level for repeat felony offender). During the guilt-innocence phase, the State called as witnesses the victim, police officers involved in the investigation, one of the victim's relatives who also worked at the restaurant where the incident allegedly occurred, a forensic interviewer who interviewed the victim, and a counselor who worked for the children's advocacy center ("CAC") where the victim received therapy. In his case-in-chief, Morones elected to testify. At the end of the guilt-innocence phase, the jury

found him guilty of the charged offense. Following a punishment hearing, the jury found the enhancements to be true and recommended that he be sentenced to thirty years' imprisonment. The trial court rendered its judgment of conviction in accordance with the jury's verdict. On appeal, Morones contends that his trial attorney provided ineffective assistance of counsel and that the trial court improperly allowed the counselor to comment on the victim's truthfulness. We will affirm the trial court's judgment of conviction.

## DISCUSSION

### Effective Assistance of Counsel

In his first issue on appeal, Morones contends that his trial attorney provided ineffective assistance of counsel. As support for his claims, he references multiple exchanges set out below from a pretrial hearing and a hearing on the first day of trial before voir dire.

At the pretrial hearing, Morones informed the trial court that he understood the charge against him and the potential punishment range. The trial court discussed how the State had made a plea-deal offer for twenty years, and one of the prosecutors explained that the new deal being offered that day was for fifteen years. Morones rejected the offer after explaining that he understood the new offer and did not need additional time to discuss the offer with his attorney. At that point, Morones's attorney stated as follows:

> [Defense attorney]: Just to put this on the record, Judge, one of the reasons why I had asked to reset the case after I bonded him out was the public defender's office had an investigator working on [Morones's] case. One of the things that we had asked was to see if there was surveillance video footage from the scene, the restaurant where this allegedly occurred. There is not. There is no video camera footage. The other was that other people had come in and applied potentially for [Morones's] job. And I wanted to let you know that the investigator had done that work, talked to the people, and that no applications were on file and they did not have any evidence that they were going to be able to bring to court to suggest that

2

another person had applied for a job the day or the day prior to this incident in question. . . . I wanted to get that wrapped up before I subbed in. So I wanted to make it clear on the record that work has been completed and we will not have any evidence available for us to present at trial in that regard. . . . They do not have video surveillance footage, nor do they have any alter[n]alive applicants for the position that the defendant had in this case.

[Trial Court]: And you understand that, Mr. Morones?

[Morones]: Yes, sir.

[Defense attorney]: Just in case that affects your desire to negotiate.

. . .

[Trial Court]: Do you still reject the offer or do you want to open it back up?

[Morones]: Reject.

At the hearing before voir dire, the trial court and the parties discussed whether there were motions in limine that might affect voir dire, and Morones's trial attorney explained that he wanted to ask the jury panel whether they could assess the minimum punishment for a defendant with prior convictions and whether they would automatically convict if the victim testified that the allegations occurred:

[Trial Court]: Here's the problem. We are still in the guilt-innocence [phase] and, so, I am going to exclude either side from talking about anyone having gone to prison before.

[Defense attorney]: Oh, god, no, Judge. I'm going to object to that fully. I'm going to tell them he's been to prison twice. He's got to testify. All that has to come up in voir dire. I would never not do that if I was going to put my client on. I'm a defense lawyer, Judge. I'm not a prosecutor. I'm a defense lawyer, and so I've got to practice law like a defense lawyer and make sure they know he's going to testify. We've discussed it. We've made a strategic decision. And they're going to impeach him with his priors that are also given notice for punishment. And, so, you're allowed to do some stuff with those, you're not allowed to do others, and, so, we need to make sure that we make clear the stuff that you're not allowed to do and ask if you're going to do it.

3

And, so, one of the things -- the limited thing that I think I'm going to focus on as a lawyer that may give fruit to Mr. Morones['s p]unishment. Who could give me 25 on this? Because that's what I am going to be asking for if we get to punishment. Twenty-five is enough. And it may be that the best thing I could do in this case is a 25-year verdict. That is a possibility that I have to countenance as I come in here: That I am never going to get acquitted; the complaining witness is going to testify, great; there's a bunch of consistent other witnesses that are going to be found credible; and the best outcome I could hope for is to minimize his sentence to 25 years, the minimum allowed by law which is –

[Trial Court]: [Counselor], here I -- I mean, it sounds to me as though you and your client have thought through a specific strategy that you want to do, and, so, you putting that on the record let[]s me know that that's what you intend to do and you understand and have thought about the perils of doing it . . . before someone has ever been found guilty.

[Defense attorney]: Correct.

[Trial Court]: And you understand and have thought and talked with your client about the potential prejudice that creates in the guilt-innocence portion of the trial.

[Defense attorney]: Correct, Judge. That we have a choice to testify or not. If we don't testify --

[Trial Court]: I'm talking about -- I'm talking about if you do it now before they even start deciding anything, before they are even sat, you've thought about how that may prejudice a panel. I just want to hear a "yes" or "no."

[Defense attorney]: A hundred fifty percent, Judge. . . . And if you want to know just the entirety of the thought process, Mr. Morones is going to testify.

[Trial Court]: No, I don't want to know. I don't want to know about the thought process. . . . I just want to know that y'all have had that discussion and you're doing this voluntarily and you understand those things.

[Defense attorney]: Absolutely. And I would even -- I would like to take up what the judge is saying, Victor, because what the judge is saying is what I'm proposing goes against the grain, that you always keep from the jury the fact that someone has been to prison. That is what they teach you day one. But, to me as a defense lawyer, and I think I'm the only person here who's tried a bunch of criminal cases from the defense side -- and I'm definitely the only person hired -- is that you're either going to testify or you're not. And if you are going to testify and you know that you're going to testify --[.] And in some cases you have to testify, and I discussed with you that this may be one of them there cases where if you don't testify and you don't rebut what they're saying, jurors are going to view that as an admission. And, so, you have a decision to make and it's your decision

4

alone whether to testify. But if you testify, then I'm going to recommend to you very strongly, as the only person you paid and the only person who has tried habitual cases in numerous counties throughout the state of Texas, that you tell the first person available to me, I've been to prison a bunch but never for sexual and I know what happens. And all of those things --

[Trial Court]: [Counselor], I do want to stop you. I see where you're going. . . . That's a strategic thing. That's between --

[Defense attorney]: Your decision then. And what the judge wants to know is, you are aware that this is highly prejudicial and that you have decided that you're going to testify and that these are decisions that you have made and you're not going to come back --[.] And I understand exactly what the judge is saying. We don't want you to come back and say, "I had no idea that he was this stupid. I had no idea that my lawyer was this crazy." And, so, your eyes wide open that this is a very --

[Trial Court]: I don't want to get into the thought process. You have attorney-client communication.

[Defense attorney]: No, no, no. You're just saying that, typically, you don't bring up priors in guilt-innocence. It is something you rarely if ever do. But I'm telling you as somebody who has done a lot of criminal defense work, oh, there are reasons why you do it. . . . We have discussed those and you are taking my advice. You're not going to come back later and tell this judge I wasn't taking advice, I was being misled. That's what the judge wants to know right now. [Are] your eyes wide open about how most lawyers would never bring up priors? You know that, correct? Because you are on the record. The judge needs to hear you say that.

[Morones]: Yes.

[Defense attorney]: And I have discussed with you whether you're going to testify or not.

[Morones]: Yeah, I'm going to testify.

[Defense attorney]: And that if you didn't testify, I would completely agree with the judge and never bring up any of this.

[Trial Court]: I don't want to get in on the strategy, but I just want to make sure it's clear on the record that before this happens that --

[Defense attorney]: It's a strategy. It's a decision.

[Trial Court]: Are you doing this voluntarily?

5

[Morones]: Yes.

[Trial Court]: And you're doing it, you know, after consultation and, obviously, a lot of talking and advice. I don't want to know the details. That's between you and your attorney, but you're doing that (inaudible) that, correct?

[Morones]: Yes.

[Trial Court]: Okay.

[Defense attorney]: And you know you can not testify. I can't make you testify. . . . Testifying or not is your choice, correct?

[Morones]: Right.

[Defense attorney]: And my advice to you is if you choose to testify, then my advice is we're going to tell the jury. But it's your decision to testify which triggers my decision. You're aware of that.

[Morones]: Yes.

[Defense attorney]: . . . Okay, we're good. Thanks, Judge.

. . . .

[State]: Yeah. Judge, my only concern there is really if that's guaranteed to the panel during the jury selection phase that the defendant is going to testify. Now I have seen it done that way before. I've seen it, you know, in other districts. My only, I guess, caution -- and before we get there, that's kind of the purpose what we're having here today -- is if there's guarantees about [what] will be testified to, if there are statements about what type of offenses these were. And I'm a little concerned even about the guarantee of who in particular is going to testify that we could be getting into commitment question territory pretty quick because now we're talking about what that evidence is actually going to be.

[Trial Court]: Right. You can't talk about -- And I think, [Counselor], you can't in voir dire talk about what that evidence will be.

[Defense attorney]: Priors.

[Trial Court]: Well, you can't talk about --[.] Yeah, don't talk about the specificity of the priors or what the evidence would come out on the stand.

[Defense attorney]: But I assume we're safe to say we didn't do it. That's the crux of it. They said that this contact happened. . . . We say it didn't.

6

[Trial Court]: Not during voir dire. You get to do that in opening statements, you can do that in argument, you can do that from the evidence but not during voir dire.

[Defense attorney]: Whatever is inferred from a "not guilty" plea, I guess. We'll say that he's going to testify to --

[Trial Court]: Right. Yeah.

[Defense attorney] -- whatever supports his "not guilty" without specifically saying . . . we didn't do it.

[Trial Court]: Exactly, or any of the details to that.

. . . .

[Defense attorney]: Right. So that -- that is fine. I do want to be able to say -- and correct me if I'm wrong -- is that -- because this is the crux of it -- is that based on the charge, if a girl comes to court and testifies, and this guy has been to prison and he testifies, I would never be able to acquit no matter what the evidence is. I believe that is a valid challenge for cause. I could no longer presume innocence. Now we can't tell you any of the priors. We can't tell you anything other than he's pleading "not guilty," can't give you any of the supporting details correctly, but just "not guilty." Guilty, not guilty. If we have been to prison, are we guaranteed a guilty verdict? And if someone says "yes, in my mind" --

[State]: So I think to address, I think, that concern, Judge, I think usually how I see this phrased is if this falls in this enhanced punishment range, if the State proves or if it's proven one way or another that he's been to prison before, how many people simply cannot consider the minimum? I'm going to ask them that.

[Trial Court]: Yeah, can't consider the minimum.

[Defense attorney]: No. I'm saying could not acquit him, like, looking at it. Because my understanding is you cannot use the priors for character, correct? It just goes to credibility. And, so, if they're just saying as just a numbers thing --[.] Like, if it is a swearing match between my momma and some guy I don't know, my momma is always winning, and that here we're in a situation where if it is a -- whatever I can say, complaining witness -- I think that is all I can say -- minor complaining witness, somebody defined as a child under the law --

[Trial Court]: Just say complaining witness.

[Defense attorney]: Complaining witness as defined by law and a defendant who has been to prison, does that automatically mean you find him guilty? If there's anyone who says I would automatically find that person guilty in that scenario, I

7

could never acquit no matter what the evidence was, no matter what the complaining witness said --

[Trial Court]: See, the problem with the way you're saying is committing both ways. You could say couldn't consider all the evidence before making a decision. Putting it in such absolute terms of acquittal and finding a person guilty is a commitment question. But you can't say who would not be able to wait to make a decision until they consider all the evidence.

[Defense attorney]: Well, the idea is, is that if someone says if I know and how I ask it --

[Trial Court]: All right. I'm going to stop – I'm going to stop all of it. If you have an objection, you object, we will approach and talk about it.

[Defense attorney]: Yes, sir. Cool. And I'll try to ask it artfully.

[Trial Court]: All right.

After referencing these exchanges, Morones argues on appeal that his trial attorney "creat[ed] a conflict of interest by questioning the defendant before the bench in the presence of the prosecutor regarding [his] rejection of the plea offer, and 'putting [] into evidence' the defense strategies to be pursued during voir dire including [his] testifying, the maximum punishment, and admitting [he] was a felon." Further, he contends that his trial attorney "crossed the line" by going "into great detail regarding strategy and what he planned on saying and doing" so without concern for "what was best for" him and "seemed [to] want[] direction from the court and the prosecution." More specifically, he notes that his attorney "provided a soliloquy on what he intended to ask potential jurors, mentioned that he would discuss that [Morones] had been to prison," and "informed the prosecution and the judge that [Morones] would take the stand and that he planned to share this with potential [j]urors." Additionally, he highlights that the trial court interrupted his attorney to explain that it did not want to hear about trial strategies or whether Morones had decided to testify. Moreover,

Morones claims that his attorney's disclosures allowed the State to prepare to cross-examine him and that his attorney cared more about claims of ineffective assistance than the attorney's "duty to his client." When presenting these claims, he notes that there are different standards for reviewing the effectiveness of an attorney's representation depending on whether the attorney had a conflict of interest. *See Strickland v. Washington.* 466 U.S. 668, 687 (1984); *Cuyler v. Sullivan,* 446 U.S. 335, 350 (1980). However, he contends that he was denied effective assistance of counsel under either standard.

The Sixth Amendment to the United States Constitution guarantees in all criminal prosecutions that the accused shall have "the right to the *reasonably effective* assistance of counsel." *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997). The Sixth Amendment also guarantees a defendant the right to "conflict-free" representation. *Ex parte McCormick*, 645 S.W.2d 801, 802 (Tex. Crim. App. 1983); *see Orgo v. State*, 557 S.W.3d 858, 861 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Most claims of ineffective assistance of counsel are reviewed under the analytical framework set forth in *Strickland*. *See* 466 U.S. at 687. Although *Strickland* governs claims of ineffective assistance of counsel based on attorney error, claims involving an actual conflict of interest are reviewed under *Cuyler*. *See* 446 U.S. at 350; *see also Odelugo v. State*, 443 S.W.3d 131, 136 (Tex. Crim. App. 2014) ("[T]he proper standard by which to analyze claims of ineffective assistance of counsel due to a conflict of interest is the rule set out in *Cuyler v. Sullivan*[.]" (quoting *Acosta v. State*, 233 S.W.3d 349, 356 (Tex. Crim. App. 2007))).

To resolve this issue on appeal, we must first decide which standard to apply. *See Houston v. State*, __ S.W.3d __, No. 03-24-00557-CR, 2026 WL 63108, at *11 (Tex. App.—Austin Jan. 8, 2026, no pet. h.). If trial counsel had an actual conflict of interest, the test from

9

*Cuyler* should be applied. *Id.* If trial counsel did not have an actual conflict, the test from *Strickland* is the appropriate standard by which to assess Morones's ineffectiveness claim. *Id.* The critical difference between the *Cuyler* test and the *Strickland* test is that there is a lesser burden when the claim of ineffective assistance involves a conflict of interest than when a claim is based on attorney error. *Thompson v. State*, 94 S.W.3d 11, 16 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

Under *Cuyler*, a defendant demonstrates a violation of his right to reasonably effective assistance of counsel if he can show that (1) his counsel was burdened by an actual conflict of interest and (2) the conflict had an adverse effect on specific instances of counsel's performance. 446 U.S. at 348-50; *see Acosta*, 233 S.W.3d at 356; *Monreal*, 947 S.W.2d at 565. If the appellant shows that both requirements are met, appellate courts presume prejudice occurred. *Mitchell v. State*, 989 S.W.2d 747, 748 (Tex. Crim. App. 1999).

Until a defendant shows his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. *Cuyler*, 446 U.S. at 350. An actual conflict of interest exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps his own) to the detriment of his client's interest. *See Odelugo*, 443 S.W.3d at 136; *Monreal*, 947 S.W.2d at 564. The conflict, however, must be more than merely speculative. *James v. State*, 763 S.W.2d 776, 778-79 (Tex. Crim. App. 1989). A potential conflict of interest is insufficient to reverse a conviction. *Cuyler*, 446 U.S. at 350; *Goody v. State*, 433 S.W.3d 74, 79 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). "[A] potential conflict may become an actual conflict, but [an appellate court need not] speculate about a strategy an attorney might have pursued, but for the existence of a potential conflict of interest, in the absence of some showing

that the potential conflict became an actual conflict." *Routier v. State*, 112 S.W.3d 554, 585 (Tex. Crim. App. 2003).

"The most likely scenario for a conflict of interest to develop is when an attorney represents two co-defendants in the same case, i.e., multiple or joint representation." *Thompson*, 94 S.W.3d at 16. An actual conflict may also be present when an attorney represents a defendant and a witness called during the defendant's trial. *See Ramirez v. State*, 13 S.W.3d 482, 485, 489 (Tex. App.—Corpus Christi-Edinburg 2000, pet. dism'd) (determining that there was actual conflict where lawyer simultaneously represented defendant and witness who testified that defendant made incriminating statements in prison because attorney was forced to choose between what was best for appellant and what was best for witness). The two examples above are not the only ways in which an actual conflict could result. *See Acosta*, 233 S.W.3d at 354 (concluding that conflict could occur where defendant's "trial counsel actively represented the interests of a third party during the [defendant]'s trial"). But the record must still show that the attorney was "actively represent[ing] conflicting interests." *Cuyler*, 446 U.S. at 350.

In this case, Morones does not contend that an actual conflict occurred because his trial attorney was representing or had represented individuals with interests that conflicted with his; instead, he argues that his trial attorney disclosed trial strategy to the trial court in front of the prosecution in an effort to insulate himself from an ineffectiveness challenge. The Court of Criminal Appeals considered similar arguments in *Monreal* where the defendant's trial attorney extensively questioned the defendant about the terms of a plea offer and why the defendant rejected the offer. 947 S.W.2d at 560-61. Unlike the current case, which was tried before a jury for both phases of the trial, *Monreal* was an appeal of a bench trial. *Id.* at 561; *see also id.* at 561-62 (noting that defendant was arguing that his defense was compromised

11

"when the trier of fact . . . learned he considered pleading guilty, was scared, and had a misunderstanding with his own attorney" and, accordingly, when his presumption of innocence was allegedly undermined).

When deciding which standard should apply to the ineffectiveness challenge in *Monreal*, the Court of Criminal Appeals noted "that a defendant has the right to be informed of plea bargain offers," "that defense counsel's failure to so inform his client constitutes ineffective assistance," and that "Rule 1.03(a) of the Texas Disciplinary Rules of Professional Conduct mandates that a lawyer keep his client 'reasonably informed' of matters such as plea bargain offers." *Id.* at 564 (citing Tex. Disciplinary R. Prof. Conduct 1.03 & comment 1). For those reasons, the Court explained that "to protect herself from a future claim of ineffective assistance, all that appellant's trial counsel needed to do was to put into the record the fact that she had informed appellant of the plea bargain offer and that he had rejected it." *Id.* Further, the Court stated that it could think "of no reason why the presentation of such information, even before the trier of fact, would have harmed appellant in any way or would have conflicted with his interest in a fair trial." *Id.* Stated differently, the Court reasoned that "it appears that appellant's trial counsel could have protected herself without compromising appellant's interest in a fair trial" and that she "was not required to make a choice between advancing her client's interest in a fair trial or advancing her own interest in avoiding a future claim of ineffective assistance." *Id.* at 565.

Expanding on this thread, the Court explained that the attorney's "personal interest did not actually conflict with appellant's interest. The fact that she was less than artful in executing her personal interest—by eliciting unnecessary, and potentially damaging, information before the trier of fact—did not create an actual conflict of interest where none otherwise

12

existed." *Id.* Accordingly, the Court concluded that "the *Strickland v. Washington* test, rather than the *Cuyler v. Sullivan* test, governed appellant's claim of ineffective assistance." *Id.*

As in *Monreal*, Morones's trial attorney could have protected himself and advanced his strategy without compromising Morones's interest in a fair trial and was not required to choose between advancing his own interest in avoiding an ineffectiveness challenge or advancing Morones's interest in a fair trial. *See id.* The fact that Morones's attorney might have been inartful while executing his interest and advancing his strategy by disclosing unnecessary information did not create a conflict where none otherwise existed. *See id.* Moreover, unlike in *Monreal*, the referenced and allegedly unnecessary information was not disclosed in front of the trier of fact. *See id.* Accordingly, like the Court in *Monreal*, we conclude that the record does not establish that an actual conflict of interest existed and that, therefore, the *Strickland* test governs Morones's ineffectiveness claim. *See id.*; *see also Houston*, 2026 WL 63108, at *12 (determining that *Strickland*, not *Cuyler*, should apply to ineffectiveness claim even though defendant asserted that lawyer's prior representation of father of claimant created actual conflict of interest).

To demonstrate ineffective assistance of counsel under *Strickland*, a defendant must establish by a preponderance of the evidence both deficient performance by counsel and prejudice. *See* 466 U.S. at 687; *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). First, the defendant must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-88; *Ex parte Scott*, 541 S.W.3d 104, 115 (Tex. Crim. App. 2017). Next, the defendant must show the existence of a reasonable probability that the result of the proceeding would have been different absent his counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Burch v. State*,

13

541 S.W.3d 816, 820 (Tex. Crim. App. 2017). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700; *see Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Regarding the second prong, the requirement that there be a reasonable probability that the results would have been different means "a probability that is sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). "Prejudice to the [defendant] from counsel's deficient performance is judged by 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Ex parte Amezquita*, 223 S.W.3d 363, 366 (Tex. Crim. App. 2006) (quoting *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005)). "It will not suffice for [the defendant] to show 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 693).

In this case, no motion for new trial was filed, and accordingly, no hearing on any motion for new trial was held. In general, direct appeals do not provide a useful vehicle for presenting ineffectiveness claims because the record for that type of claim "is generally undeveloped." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017).

On appeal, Morones contends that his trial counsel disclosed (outside the presence of the jury) details regarding trial strategy and that the State was better prepared to cross-examine him because his trial attorney stated that he would be testifying. However, he does not explain how these disclosures prejudiced him, meaning that the result of the proceeding would have been different without the allegedly improper actions of his attorney. *See Strickland*,

14

466 U.S. at 694; *see also Shamim v. State*, 443 S.W.3d 316, 324 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (noting that "[t]o prevail on a claim of ineffective assistance of counsel for failing to adequately prepare the client to testify, a movant must demonstrate that the alleged error caused the client prejudice, i.e., that better preparation would have benefited the client and led to a better result"); *Navejar v. State*, 730 S.W.2d 121, 124-25 (Tex. App.—Corpus Christi-Edinburg 1987, pet. ref'd) (determining that trial counsel did not provide ineffective assistance by disclosing to jury panel that defendant had been convicted of two felony offenses where defense attorney believed it was necessary for defendant to testify and where evidence of prior convictions would be admitted during his testimony; "defense counsel believed it was best to be 'up front' with the jury regarding appellant's criminal record from the beginning of the trial"). Because Morones has not shown that the allegedly ineffective conduct by his attorney prejudiced him, we must conclude that he has failed to meet his burden to be entitled to relief on an ineffective-assistance claim. *See Strickland*, 466 U.S. at 700; *see also Watkins v. State*, 333 S.W.3d 771, 781 (Tex. App.—Waco 2010, pet. ref'd) (overruling ineffectiveness challenge where defendant did not "affirmatively prove the prejudice prong" "in his brief").

For these reasons, we overrule Morones's first issue on appeal.

**Witness's Testimony**

In his second issue on appeal, Morones contends that the trial court improperly allowed the CAC counselor to testify as an expert about the truthfulness of the victim. Morones contends that the counselor "testified to children remembering more detail after their [forensic] interview[s]" and "in a roundabout way" testified about the victim's truthfulness. He asserts that this type of testimony "crossed the line of assisting the jury" by communicating to the jury that

15

the victim "gave different versions of events because she was 'traumatized'" and by expressing that the victim "was believable because the inconsistent versions of events w[ere] due to her trauma." He contends that this testimony should not have been admitted under Rule of Evidence 702 because the testimony was "a direct comment upon [the victim's] credibility, which improperly invaded the exclusive province of the jury."

As an initial matter, it appears that Morones has not preserved this issue for consideration on appeal. During the counselor's testimony, she testified that she worked for the CAC where the victim had received therapy from another therapist. The counselor testified that she was the supervisor of the other therapist and had reviewed the records in the case. Next, she discussed how there is "a consistent pattern of certain symptoms we see" for children who have gone through trauma and then was asked by the State if those symptoms relate to how trauma is processed. At that point Morones's attorney objected by asserting that the testimony would "[a]ssume[] facts not in evidence" and by invoking Rule of Evidence 802, which generally prohibits the admission of hearsay. *See* Tex. R. Evid. 802. The trial court overruled those objections.

The counselor continued her testimony and explained there are different trauma responses that can be triggered by the body: the flight, fight, and freeze responses. The counselor discussed those types of responses and stated that for teenagers the most common response is to freeze. The State then asked if the responses could affect how someone remembers an event. The counselor testified that the responses could impair memory formation, and Morones's attorney requested to take the witness on voir dire to set out the basis for her opinion. The trial court informed Morones's attorney that he would be able to cross-examine the witness. Morones's attorney then objected by stating that "I don't think they laid a predicate that

16

any of this stuff is based in science." The trial court did not expressly rule on the objection but again told Morones's attorney that he could cross-examine on the issue.

The counselor resumed her testimony and discussed how she learned about the various types of responses through her training and her career. She testified how a freeze response could affect the way in which a child would discuss a traumatic event and how it could "take[] a lot of work to get those memories" because a child might not think that they remember what happened. Morones's attorney requested to take the witness on voir dire because he did not know what her background was and because he believed a witness would need to be an expert to "talk[] about repressed memories." The State told the trial court that it was not seeking to elicit testimony about repressed memories and was instead asking about the counselor's "personal experience broadly." The trial court overruled the objection. Morones's attorney asked for a *Daubert* hearing, and the trial court excused the jury. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 597 (1993) (explaining that trial courts have "gatekeeping role" to "ensure that any and all scientific testimony is not only relevant, but reliable"); *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) (setting out similar trial court role in admitting novel scientific evidence).

At the hearing, the counselor testified that she had not intended to suggest that suppressed memories could be recalled in therapy but explained that children can avoid talking about trauma in therapy and that a child might say in therapy that she remembers something that she had not disclosed during a forensic interview. Further, the counselor related that she does not inform law enforcement about what is said during a therapy session and that she did not think a jury would consider her testimony as evidence of what happened on the day of the alleged incident. When the State questioned the counselor, she explained that her expertise was not in

17

memory but that she had experience with children having difficulty recalling details due to their having a response to trauma. Moreover, the counselor explained that she could not provide an opinion on whether the victim in this case was telling the truth and that she would not be able to assess whether a child was fabricating any of her claims. Morones's attorney then repeatedly objected on "relevance" grounds.

The trial court overruled the objections and explained that it believed testimony concerning the counselor's "knowledge of general behaviors" was relevant, but the trial court also related that questions about specific witnesses would not be relevant and that objections to those types of questions would be sustained. Morones's attorney then expressed his concerns to the trial court about the possibility that his cross-examination of the counselor might open the door to testimony concerning the victim's allegations and behavior if he were to question the counselor about why the victim had made inconsistent statements about what happened, but no objection was made or ruled on. After that discussion, the jury was called back in, and the counselor continued her testimony.

Generally, before a party may present "a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion" "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." *See* Tex. R. App. P. 33.1(a). Preservation of error is a "systemic requirement" on appeal. *See Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016). An issue raised on appeal generally must be preserved by a specific objection at trial. *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). Accordingly, to preserve a complaint on appeal, the party must make a specific objection letting the trial court "know what he wants, why he thinks himself entitled to it, and do so clearly

18

enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Id.* at 312-13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)); *see Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). To be preserved for appeal, the complaint made on appeal must comport with the complaint made in the trial court. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Pena*, 285 S.W.3d at 464. "A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial." *Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009). Appellate courts should not address the merits of an issue that has not been preserved for appellate consideration. *See Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012).

Before the hearing, Morones's attorney objected to the counselor's testimony on the ground that it assumed facts not in evidence and invoked the rule against hearsay, and the trial court overruled those objections. *See* Tex. R. Evid. 802. Later, Morones's attorney objected to the counselor's testimony regarding whether the three types of trauma responses might affect how someone remembers an event by asserting that he did not think a predicate had been made concerning whether the testimony was based in science. No express ruling on that objection was made. After the counselor continued testifying, Morones's attorney objected on the grounds that the counselor did not have expertise concerning repressed memories. After the State explained that it was not intending to elicit that type of evidence, the trial court overruled the objection. At the hearing that Morones's attorney requested, he repeatedly objected to the counselor's testimony on the ground that it was not relevant, and the trial court overruled those objections. *See id.* R. 401-02. On appeal, in contrast, Morones argues that the counselor was

19

impermissibly allowed to provide expert testimony concerning the claimant's truthfulness and credibility. *See id.* R. 702.

Because his arguments on appeal do not match the objections made and ruled on at trial, Morones has not preserved his second issue. *See Cantu v. State*, 678 S.W.3d 331, 353 (Tex. App.—San Antonio 2023, no pet.) (concluding that defendant failed to preserve issue concerning police officer's testimony that victim "was being honest about what had occurred"); *Auld v. State*, 652 S.W.3d 95, 109-10 (Tex. App.—Texarkana 2022, no pet.) (determining that defendant failed to preserve complaint that counselor was improperly "allowed to testify about the truthfulness of a witness" because that claim did not match his objection at trial that witness's testimony was speculative); *see also Franco v. State*, 339 S.W.3d 793, 795 (Tex. App.—Amarillo 2011, no pet.) (concluding that appellant failed to preserve issue asserting that victim's mother's testimony improperly bolstered truthfulness of victim's allegations); *Reyes v. State*, 267 S.W.3d 268, 274 (Tex. App.—Corpus Christi-Edinburg 2008, pet. ref'd) (determining that appellant waived bolstering issue on appeal because appellant's objections at trial did not comport with bolstering argument on appeal).

Even if Morones's claims had been preserved for appellate consideration, we would be unable to sustain his second issue. Appellate courts review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably

supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). In addition, an appellate court reviews the trial court's ruling in light of the record before the court "at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

Rule 702 allows an expert to provide testimony on a topic "if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. However, "[n]either expert witnesses nor lay witnesses may testify to the truthfulness of a witness's testimony." *Tharp v. State*, 714 S.W.3d 118, 139 (Tex. App.—Austin 2024, no pet.); *see Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *see also Yount v. State*, 872 S.W.2d 706, 710, 711 (Tex. Crim. App. 1993) (noting that experts on child abuse are not human lie detectors and, accordingly, may not testify that particular witness is truthful). "[P]sychologists and others in the mental health profession have much expertise in the area of human behavior that can be of assistance to a factfinder," *Schutz*, 957 S.W.2d at 69, but expert testimony is limited to situations in which the expert's knowledge and experience on a relevant issue are beyond that of an average juror, *Yount*, 872 S.W.2d at 710-11. General testimony concerning characteristics of children can be admissible when it does not constitute a direct comment on the truth of the claimant's allegation. *See Schutz*, 957 S.W.2d at 73; *see also Brewer v. State*, 370 S.W.3d 471, 474 (Tex. App.—Amarillo 2012, no pet.) (upholding trial court's ruling allowing counselor to provide general expert testimony regarding delayed reporting and cycle of violence).

During the trial, the counselor generally discussed consistent patterns that children suffering from trauma can experience and the three types of responses that children might exhibit. She also testified that the freeze response was the most common one for teenagers

and that it could affect their ability to remember and discuss events. At the hearing held outside the presence of the jury, the counselor explained that in general children might avoid talking about trauma and could remember something later in therapy that they did not disclose during a forensic interview after working though the memory. The counselor also discussed how children can have difficulty remembering details because of their responses to traumatic events and because they actively try not to remember the events. However, she clarified that she could not express an opinion on whether the victim in this case was telling the truth.

In light of the preceding, we cannot conclude that the trial court abused its discretion by overruling Morones's objection.[1] *See DeLong v. State*, Nos. 02-04-00410—00411-CR, 2006 WL 3334061, at *5-6 (Tex. App.—Fort Worth Nov. 16, 2016, pet. ref'd) (op., not designated for publication) (concluding that expert's general testimony was admissible where it described how circumstances surrounding claimant's outcries were consistent with creation of false memories but also specified that expert could not say that any particular allegation was false).[2]

---

[1] We note that following the ruling, the CAC counselor testified multiple times in her direct testimony at trial that she was not in a position to comment on the truthfulness of the claimant's allegations and was not doing so. During her cross-examination, the counselor agreed in response to a question by Morones that the assumption in these types of cases is that a false allegation is rare to nonexistent. *See Christ v. State*, 480 S.W.2d 394, 397 (Tex. Crim. App. 1972) ("Appellant cannot complain of testimony that he first elicited.").

[2] The heading for this issue contains a phrase stating that the counselor "was not an expert in any recognized science," and Morones mentions in the argument section that his attorney objected on the grounds that the counselor's testimony had no scientific basis. However, he did not question the counselor regarding her qualifications or the reliability of her testimony during the hearing. And, as set out above, Morones's trial attorney's objection at the hearing was that the testimony would not be relevant. *See Chisum v. State*, 988 S.W.2d 244, 250–51 (Tex. App.—Texarkana 1998, pet. ref'd) (explaining that general objection to expert opinions without specifying particular deficiency in qualifications or reliability failed to preserve error). Similarly, in his appellant's brief, Morones does not refer to or attempt to apply the test

22

For these reasons, we overrule Morones's second issue on appeal.

**CONCLUSION**

Having overruled Morones's issues on appeal, we affirm the trial court's judgment of conviction.

_____

Karin Crump, Justice

Before Chief Justice Byrne, Justices Crump and Ellis

Affirmed

Filed:  January 15, 2026

Do Not Publish

---

for the reliability of expert testimony and does not set out why the counselor was not qualified as an expert. *See Brantley v. State*, 606 S.W.3d 328, 337 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (outlining test for reliability of "soft-science expert testimony"); *see also* Tex. R. App. P. 38.1(i) (requiring brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Burton v. Prince*, 577 S.W.3d 280, 292 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (explaining that party must provide substantive legal analysis); *Dudley v. State*, 58 S.W.3d 296, 299 n.4 (Tex. App.—Beaumont 2001, no pet.) (declining to address any issue concerning reliability of expert testimony or expert's qualifications because issue was not adequately briefed as required under Rule 38.1).